## DURANT v. STAHLIN.

APPEAL *in re* VAN DUSEN, ELLIOTT, ROMNEY.

DECISION OF THE COURT.

**1.** JUDGMENT—SUMMARY JUDGMENT—LIBEL AND SLANDER.
Motions for summary judgment, interposed by 3 of 14 defendants in action for libel and conspiracy to libel, *held*, properly granted (GCR 1963, 117).

SEPARATE OPINION.

DETHMERS, O'HARA, and ADAMS, JJ.

**2.** CONSTITUTIONAL LAW—FREEDOM OF EXPRESSION—POLITICS.
*Freedom of expression, especially in the area of public affairs and political action, is an essential American heritage.*

**3.** TORTS—LIBEL—CONSPIRACY.
*Libel and conspiracy are tortious in character, and sometimes they are criminal activities, for which the victim should not go remediless.*

**4.** CONTINUANCE—DISCRETION OF COURT.
*Refusal of continuance held, not an abuse of discretion by trial judge at hearing on defendants' motions for summary judgment, where the defendants appeared ready to testify in support of their motions, plaintiff's counsel stated he had lost his voice and could hardly talk and would like to cross-examine the defendants at some other time, and a prolonged discussion followed between the trial court and counsel (GCR 1963, 117).*

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur, Pleading §§ 340, 341.
[2] 16 Am Jur 2d, Constitutional Law § 341 *et seq.*
[3] 33 Am Jur, Libel and Slander §§ 3, 308.
[4] 17 Am Jur 2d, Continuance § 3.
[5] 41 Am Jur, Pleading § 342.
[6-37] 41 Am Jur, Pleading §§ 340-342.

5. JUDGMENT—SUMMARY JUDGMENT—PLAINTIFF'S BURDEN.

 *A plaintiff who is confronted by a defendant's motion for summary judgment must establish plaintiff has a case on the law and that there are some evidentiary proofs to support his allegations as to any material fact (GCR 1963, 117).*

6. SAME—SUMMARY JUDGMENT—FUNCTION OF DEFENDANT'S AFFIDAVIT.

 *The function of a defendant's affidavit in a summary judgment proceeding is to establish affirmatively under oath that there is no basis in fact to support plaintiff's claims (GCR 1963, 117).*

7. SAME—SUMMARY JUDGMENT—FUNCTION OF COUNTER AFFIDAVITS.

 *The function of a plaintiff's counter affidavits in a summary judgment proceeding is to establish that there is some evidence as to material facts upon which to proceed to trial (GCR 1963, 117).*

8. SAME—SUMMARY JUDGMENT—EVIDENCE.

 *There is no question of the relative weight to be given the evidence in a summary judgment proceeding, for if the party opposing the motion produces some evidence, the motion is denied, the opponent of the motion being given the benefit of all doubt (GCR 1963, 117).*

9. SAME—SUMMARY JUDGMENT—QUESTION PRESENTED.

 *The question to be determined in a summary judgment proceeding is whether the affidavits together with the pleadings, depositions, admissions, and documentary evidence then filed in the action present a genuine issue as to any material fact (GCR 1963, 117.3).*

10. SAME—SUMMARY JUDGMENT—CHARACTER OF AFFIDAVITS.

 *Affidavits used in a summary judgment proceeding must be made on personal knowledge of the affiant and shall set forth with particularity such facts as would be admissible as evidence to establish or deny the grounds stated in the pleading or motion, and such standard is not satisfied with an affidavit which is based solely on information and belief (GCR 1963, 116.4, 117.3).*

11. SAME—SUMMARY JUDGMENT—COUNTER AFFIDAVITS—SUFFICIENCY.

 *Counter affidavits plaintiff presented in summary judgment proceeding in libel and conspiracy suit, which were based solely on information and belief and did not set forth with particularity facts admissible in evidence, the beliefs related being*

*objectionable as opinion evidence, and alleged information fail-
ing to state basis therefor, thereby failed to afford the trial
court anything to view in a light favorable to plaintiff in
support of his presentation of an issue as to a material fact
as required by pertinent court rule (GCR 1963, 116.4, 117.3).*

12. SAME—SUMMARY JUDGMENT—PURPOSE OF AFFIDAVITS.

*The purpose of affidavits in a summary judgment pro-
ceeding is to ascertain whether or not an issue of fact exists,
and is not to usurp the province of the right to trial by jury
(GCR 1963, 116.4, 117.3).*

13. SAME—SUMMARY JUDGMENT—AFFIDAVITS.

*Judgment must be rendered forthwith, where the pleadings
show that a party is entitled to judgment as a matter of
law or if the affidavits or other proof show that there is no
genuine issue of fact, it not being enough to make general
allegations, notice pleading, and allege matters upon infor-
mation and belief or common knowledge (GCR 1963, 117.3).*

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and SOURIS and SMITH, JJ.

14. JUDGMENT — ACCELERATED JUDGMENT — SUMMARY JUDGMENT —
COURT RULES.

*The court rules relative to accelerated judgment and for sum-
mary judgment were designed to provide comprehensively
means for terminating litigation prior to trial, but only in
certain expressly enumerated circumstances by no means uni-
versally applicable to every suit in the State (GCR 1963, 116,
117).*

15. SAME—SUMMARY JUDGMENT—FAILURE TO STATE CAUSE OF AC-
TION.

*The motion for summary judgment is an appropriate means to
assert that the opposing party has failed to state a cause of
action or claim upon which relief can be granted (GCR 1963,
117.2[1]).*

16. SAME—SUMMARY JUDGMENT—FAILURE TO STATE A VALID DE-
FENSE.

*The motion for summary judgment may be utilized by the party
asserting a claim when the opposite party has failed to state
a valid defense to such claim (GCR 1963, 117.2[2]).*

17. SAME—SUMMARY JUDGMENT—GENUINE ISSUE AS TO A MATERIAL FACT.

> *The present summary judgment procedure includes the former practice as to summary judgments in respect to absence of a genuine issue as to a material fact (GCR 1963, 117.2[3]).*

18. SAME—SUMMARY JUDGMENT—FAILURE TO STATE CAUSE OF ACTION—AFFIDAVITS.

> *A motion for summary judgment based upon the ground that the opposing party has failed to state a claim upon which relief can be granted needs no affidavit in support since the ground for the relief requested must, if at all, appear on the face of the pleading so attacked (GCR 1963, 117.2[1]).*

19. SAME—SUMMARY JUDGMENT—FAILURE TO STATE VALID DEFENSE —AFFIDAVITS.

> *A plaintiff's motion for summary judgment on the ground that the defendant has failed to state a valid defense to a valid claim asserted against him need not be supported by affidavit (GCR 1963, 117.2[2]).*

20. SAME — SUMMARY JUDGMENT — ACCELERATED JUDGMENT — AFFIDAVITS.

> *Motions for summary judgment predicated upon a failure to state a claim upon which relief can be granted or a valid defense to the claim asserted may be joined with motions for accelerated judgment upon grounds set forth in court rule pertaining to latter kind of judgment, with or without affidavit support, or combined with motion for summary judgment because of absence of genuine issue as to any material fact and with or without affidavit support as circumstances may require (GCR 1963, 116.1, 117.2).*

21. SAME—MOTION FOR SUMMARY JUDGMENT—AFFIDAVITS.

> *Normally affidavits in support of or in opposition to motions for summary judgment will be appropriate only where such judgment is based on the claim that there is no genuine issue as to any material fact (GCR 1963, 117.2[3], 117.3).*

22. SAME—SUMMARY JUDGMENT—TRIAL.

> *The summary judgment procedure cannot be likened to a trial wherein one is confronted with one's accusers and permitted to cross-examine them (GCR 1963, 117).*

23. SAME—SUMMARY JUDGMENT—ISSUE OF FACT.

> *The function of a court in disposing of a motion for summary judgment is not to decide issues of fact, but to ascertain*

*whether or not there is an issue of fact to be tried, resolving all doubts as to the existence of a genuine issue of fact against the moving party (GCR 1963, 117).*

24. SAME—SUMMARY JUDGMENT—ISSUE OF FACT.

*A summary judgment may not be granted once it is determined that a genuine and material factual issue is to be determined (GCR 1963, 117).*

25. SAME—SUMMARY JUDGMENT—EVIDENCE—DIRECTED VERDICT.

*The situation must justify a directed verdict insofar as the facts are concerned in order to justify a summary judgment, that is, the evidence on one or the other hand must be too incredible to be accepted by reasonable minds or is without legal probative force even if true (GCR 1963, 117).*

26. SAME — SUMMARY JUDGMENT — USE OF AFFIDAVITS — ISSUES OF FACT.

*Affidavits, while usable in an inquiry to determine the existence of an issue of fact on motion for summary judgment, are totally inappropriate for use in resolving disputed issues of fact, where direct evidence thereon is available (GCR 1963, 117).*

27. SAME—SUMMARY JUDGMENT—CONFLICTING INFERENCES.

*The existence of permissible conflicting inferences which can be drawn from the affidavits, depositions, and other evidence before the court at its inquiry on motion for summary judgment, bars the grant of such relief (GCR 1963, 117).*

28. SAME—SUMMARY JUDGMENT—DETERMINATION OF CREDIBILITY.

*The trial judge engaged in an inquiry on motion for summary judgment must not usurp a trial jury's right, nor anticipate his own right as a trial fact finder should he become one, to determine the affiant's credibility, when the existence of a disputed issue of fact depends upon such credibility (GCR 1963, 117).*

29. SAME—SUMMARY JUDGMENT—CREDIBILITY OF AFFIANT OR DEPONENT.

*Summary judgment procedure is not available when a presented issue of material fact turns upon the credibility of an affiant or witness whose deposition has been taken (GCR 1963, 117).*

30. SAME—SUMMARY JUDGMENT—CREDIBILITY OF AFFIANT INTERESTED IN LITIGATION.

*A presented issue of fact that turns upon the credibility of an affiant, particularly when he is interested in the result of the litigation, requires submission of the credibility of the witness*

*to the jury as a question of fact, precluding entry of a summary judgment (GCR 1963, 117.2).*

31. SAME—SUMMARY JUDGMENT—MOTIVE—INTENT.
   *Summary judgment procedure should be used sparingly in litigation where motive and intent play leading roles (GCR 1963, 117.2).*

32. SAME—SUMMARY JUDGMENT—CROSS-EXAMINATION—MOTIVE—INTENT.
   *The cross-examination of witnesses at the hearing on motion for summary judgment is no substitute for trial by jury even though it may assist in determining whether or not there are genuine issues of material fact, especially where motive and intent are involved (GCR 1963, 117.2).*

33. SAME—SUMMARY JUDGMENT—AFFIRMATIVE DEFENSES.
   *Summary judgment normally will not be warranted in negligence actions unless defendant has asserted an affirmative defense such as res judicata, discharge in bankruptcy, or the statute of limitations and has established such affirmative defense with certainty (GCR 1963, 117).*

34. SAME—SUMMARY JUDGMENT—COST—DELAY.
   *Erroneous grant of a motion for summary judgment, if reversed on appeal, causes an additional cost to the litigants and delay (GCR 1963, 117.2).*

35. COURTS—PROMPT DISPATCH OF BUSINESS.
   *The prompt dispatch of judicial business, a virtue, is neither the sole nor the primary purpose for which courts have been established.*

36. JUDGMENT—SUMMARY JUDGMENT—LIBEL AND SLANDER—ISSUE OF FACT—EVIDENCE.
   *Motions for summary judgment, interposed by 3 of 14 defendants in action for libel and conspiracy to libel, wherein defendant movers conceded legal adequacy of asserted causes of action against them but denied plaintiff's ability to prove his asserted charges, which motions were supported by affidavits, did not permit plaintiff to rely upon his pleading but required him to come forward with affidavits or other proof of his own to establish that a genuine issue of material fact existed, and where plaintiff's affidavits filed were not responsive to defendants' affidavits, and which were based upon information and belief instead of personal knowledge of the affiant, they were inadequate to prevent entry of summary judgment if otherwise defendants were entitled thereto (GCR 1963, 117.2[3]).*

37. SAME—SUMMARY JUDGMENT—SUFFICIENCY OF AFFIDAVITS.

*Defendants' affidavits in support of their motions for summary judgment in action for libel, wherein they asserted they had no knowledge of the libelous document before its publication, had not known it was being prepared, had not participated in its preparation or its publication, and had not done anything individually or as a part of a conspiracy in making any accusations against plaintiff contained in the document, justified summary judgment for defendants, where plaintiff failed to show he had any evidence from depositions taken or from any other source to establish that if permitted to go to trial there would be any genuine issue of material fact (GCR 1963, 117.2[3], 117.3).*

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted February 3, 1965. (Calendar Nos. 31–33, Docket Nos. 50,598–50,600.) Decided June 7, 1965.

Complaint by Richard Durant against John H. Stahlin, Richard C. Van Dusen, Arthur G. Elliott, Jr., George Romney, and others for damages arising from the alleged publication of a libelous document. Summary judgment for defendants Van Dusen, Elliott, and Romney. Plaintiff appeals. Affirmed.

*Davidow & Davidow (Larry S. Davidow,* of counsel), for plaintiff.

*Dickinson, Wright, McKean & Cudlip (Fred W. Freeman* and *George B. Martin,* of counsel), for defendants Van Dusen and Elliott.

*Cross, Wrock, Miller, Vieson & Kelley (Bethel B. Kelley, W. Robert Chandler, Thomas G. Sawyer,* and *Newman T. Guthrie,* of counsel), for defendant Romney.

ADAMS, J. This appeal from orders of the trial court granting motions for summary judgment as to defendants Richard C. Van Dusen, Arthur G.

Elliott, Jr., and George Romney, is another aspect of matters dealt with in *Durant* v. *Stahlin,* 374 Mich 82, and *Zimmerman* v. *Stahlin,* 374 Mich 93.

Appellant began suit on May 21, 1962. Van Dusen, Elliott, and Romney were joined as defendants on April 19, 1963. Appellant has deposed twelve of the defendants or other possible witnesses. The depositions contain 1,250 pages of testimony.

The depositions and pleadings establish that there has been a long-standing political conflict between appellant Richard Durant and other Republican leaders in the 14th congressional district. The so-called liberal group, made up of defendants Robert Waldron, Dean Charles King, Wilbur Brucker, Sr., Paul Bagwell, and others, opposed the leadership of appellant Durant and sought to prevent his re-election as a precinct delegate to the 14th congressional district and his control of that district. These efforts are freely admitted and testified to abundantly.

It is plaintiff's theory of his case that out of these activities there emerged the conspiracy and the libel of which he complains. It is the separation of what plaintiff conceives to be these inextricably mixed political activities and the claimed libel and slander that poses plaintiff's dilemma.

Hundreds of pages of testimony as to political conflict do not make a cause of action. As Judge Horace W. Gilmore, before whom some of the depositions were taken, observed:

"When you are in a political battle you have public attacks all the time."

and

"You are establishing so far by this testimony the fact that Mr. Bagwell participated in a series of meetings among political leaders whose purpose was

to find new leadership, and certainly to my knowledge there is nothing illegal about that."

The right to freedom of expression, especially in the area of public affairs, has been dwelt upon recently by the United States Supreme Court in *New York Times Co.* v. *Sullivan,* 376 US 254 (84 S Ct 710, 11 L ed 2d 686), and by this Court in *Robbins* v. *Evening News Association,* 373 Mich 589. It is scarcely necessary to reiterate that freedom, especially as to political action, is an essential American heritage. Libel and conspiracy, on the other hand, are tortious, even sometimes criminal activities. One who has suffered from them should not go remediless.

Plaintiff developed proofs to show that a letter with enclosure over the signature of John H. Stahlin was published on May 10, 1962, charging Richard Durant with being the leader of extremist groups that "are, through bribery, intimidation, misrepresentation, and threats of physical violence, attempting to seize control of the Republican party organization in Wayne county."

The proofs show: The letter and enclosure, designated as exhibit A, was signed by Senator John H. Stahlin and published by him; the document was prepared by Charles A. Ferry, who was employed by Stahlin as his publicity director; Paul Bagwell and possibly one or two of the other defendants with whom we are not here concerned had direct contacts with defendants Stahlin and Ferry at the time of preparation and publication of the document.

In support of their motions for summary judgment defendants Van Dusen, Elliott, and Romney, filed affidavits in which they specifically and categorically denied any participation in the preparation or publication of exhibit A; any discussion of the compila-

tion, formulation, preparation, publication or distribution of exhibit A with the alleged coconspirators; any agreement to so conspire, or that they aided, abetted, or encouraged any of the other defendants; and, finally, they deny any knowledge of the existence of exhibit A or that it was being compiled, formulated, prepared, published, or distributed prior to its publication in newspapers of the city of Detroit.

The defendants further advised plaintiff in their affidavits that they would appear before the circuit judge at the time set for hearing of the motions for summary judgment for the purpose of permitting cross-examination as to any matters relating to the facts set forth in their affidavits. Defendants Van Dusen and Elliott had been deposed by the plaintiff prior to the filing of the motions for summary judgment. Their testimony on deposition consisted of a complete denial of participation in the matters charged in plaintiff's bill of complaint.

Durant countered the motions for summary judgment with affidavits in which he set up the admission of defendant Van Dusen that he actively endeavored to supplant plaintiff with other Republican leadership in the 14th congressional district of Michigan, and reiterated on information and belief "that the use of libelous statements attacking plaintiff, and particularly libelous statement exhibit A, was common knowledge among the defendants and coconspirators."

On October 4, 1963, the date set for hearing on the motions for summary judgment, defendants Van Dusen, Elliott, and Romney, presented themselves for cross-examination. Plaintiff's counsel announced to the court that he had lost his voice and could hardly talk. He asked for a continuance, stating that he would like to cross-examine the defend-

ants but upon some other occasion. The proceedings continue with page upon page of discussion between court and counsel, in which counsel for plaintiff reiterated his inability to cross-examine the defendants at that time. The hearing was finally concluded. The court declined to grant the plaintiff a continuance and granted the motions for summary judgment on the basis that:

"There is no genuine issue as to any material fact."

We agree with the ruling of the trial judge and further hold that there was no abuse of discretion in refusing a continuance. The basic rule in summary judgment matters is simple. Its application is often difficult. When properly challenged, plaintiff must establish that he has a case on the law and that there are some evidentiary proofs to support his allegations as to any material fact.

In a summary judgment proceeding, an affidavit is employed as a voluntary statement made *ex parte*. The function of affidavits by the defendant is to establish affirmatively under oath that there is no basis in fact to support plaintiff's claims. In the case of plaintiff's counter affidavits, they should establish that there is some evidence as to material facts upon which to proceed to trial. There is no question of the relative weight to be given the evidence. The party opposing the motion is given the benefit of all doubt. If he produces some evidence, the motion is denied. In this case the affiants were available for cross-examination by their own choosing.

Using the language of GCR 1963, 117.3, the question is whether the affidavits "together with the pleadings, depositions, admissions, and documentary evidence then filed in the action" present a genuine issue as to any material fact.

There has been presented by plaintiff not one single piece of admissible evidence by deposition,

affidavit, or otherwise, of plaintiff or of anyone else from which it could be found that the defendants participated in any way in the preparation or publication of exhibit A or in the purported conspiracy surrounding its preparation and publication. The plaintiff was required to do this by GCR 1963, 116.4 and GCR 1963, 117.3. The latter sub-rule provides:

"The affidavits submitted by either party shall be governed by the provisions of sub-rules 116.4."

GCR 1963, 116.4 requires that the affidavits "shall be made on personal knowledge and shall set forth with particularity such facts as would be admissible as evidence to establish or deny the grounds stated in the pleading or motion."

This language is not satisfied with an affidavit which is based solely on "information and belief". See the decisions under the corresponding Federal rule. *Automatic Radio Manfg. Co., Inc.; v. Hazeltine Research, Inc.,* 339 US 827, 831 (70 S Ct 894, 94 L ed 1312); *F. S. Bowen Electric Co., Inc.,* v. *J. D. Hedin Construction Co., Inc.,* 114 App DC 361 (316 F2d 362); *Dietrich* v. *Standard Brands, Inc.* (DC ED Pa), 32 FRD 325. Such an affidavit does not set forth with particularity facts which are admissible in evidence. The plaintiff's beliefs, although set forth with abundant particularity, are objectionable as opinion evidence. There is no basis given for the information he alleges. It may be hearsay, or objectionable on some other evidentiary ground, or it may be fully competent. The trial court was not given the means with which to make a determination. 2 CJS, Affidavits, § 26a(2), p 982. Although required to view the plaintiff's case in its most favorable light, the trial judge was given nothing to view. There was no issue of fact and he properly entered summary judgment for the defendants as required under GCR 1963, 117.3.

If it be thought that the plaintiff was denied his right to trial by jury, it must be remembered that affidavits with which we are here concerned in a summary judgment proceeding do not resolve issues of fact. Their purpose is to determine whether an issue of fact exists. See 3 Barron & Holtzoff, Summary Judgment, § 1234, pp 119, 129.

Once a party is challenged as to the existence of the facts upon which he purports to build his case, the sum and substance of the summary judgment proceeding is that general allegations and notice pleading are not enough. Matters upon information and belief and alleged common knowledge are not enough. That party must come forward with at least some evidentiary proof, some statement of specific fact upon which to base his case. If he fails, the motion for summary judgment is properly granted. In the language of GCR 1963, 117.3,

"*Judgment shall be rendered forthwith* if the pleadings show that any party is entitled to judgment as a matter of law or *if the affidavits or other proof show that there is no genuine issue of fact.*" (Emphasis supplied.)

Affirmed. Costs to defendants.

Dethmers and O'Hara, JJ., concurred with Adams, J.

Souris, J. (*concurring in affirmance*). We are obliged to review the grant of summary judgments in favor of three more of the 14 defendants identified in a two-count complaint filed by plaintiff which previously has been before this Court. See *Durant* v. *Stahlin* (1964), 374 Mich 82. See, also, *Zimmerman* v. *Stahlin* (1964), 374 Mich 93, one of a series of cases related to the case at bar.

Plaintiff's complaint charges, in the first count, 13 of the identified defendants, and two others whose identity is claimed to be unknown, with libel. The

ultimate facts pleaded are that the defendants caused to be published in May of 1962 a document which libeled plaintiff. The same libelous document is the basis for the second count in plaintiff's complaint which charges all of the defendants named in the first count plus another with conspiring among themselves and with others to cause to be published the aforesaid libelous document.

Defendants Van Dusen, Elliott, and Romney filed their answers to the complaint and, as well, motions for summary judgment, supported by their own affidavits, in which motions each alleged that there was no genuine issue as to any material fact, thereby entitling each, pursuant to GCR 1963, 117.2(3), to the peremptory relief demanded. The affidavits of each of the defendants moving for summary judgment, except for deponents' names, are identical. One only is set forth in full in an appendix to this opinion, as are two of the plaintiff's affidavits filed in opposition thereto. (His affidavit in opposition to defendant Elliott's motion is substantially identical with the affidavit he filed in opposition to defendant Van Dusen's motion.)

Testimony by deposition for discovery purposes had been taken by plaintiff from many of the defendants and others. There is no suggestion in this record that the plaintiff did not have full opportunity to exhaust the extensive pretrial discovery procedures made available to litigants by rules of this Court.[1] Moreover, the moving defendants presented themselves in open court, as each offered in his affidavit to do, for purposes of cross-examination by plaintiff's counsel. However, at the time defendants' motions for summary judgment were to be heard and defendants offered themselves for cross-examination, plaintiff's counsel requested the court for

[1] GCR 1963, 301 *et seq.*—REPORTER.

a continuance because, he claimed, he was then suffering from a throat ailment which made it difficult for him to speak. The trial judge declined to grant the requested continuance and on failure of plaintiff's counsel to cross-examine the defendants and upon counsel's failure to direct the court's attention to any evidence contained in the affidavits and the voluminous deposition transcripts which in any way supplied evidentiary support for plaintiff's claim that defendants Van Dusen, Elliott, and Romney had participated directly or conspiratorily in the publication of the libelous document, summary judgments were entered in defendants' favor.

It is quite apparent from the many appeals involving the grant or denial of motions for summary judgment which this Court has received in recent months, and is receiving, that there is a disturbing misapprehension among members of the bench and bar concerning the propriety of peremptory disposition of cases by summary judgment prior to trial as provided by our recently adopted rule, GCR 1963, 117. That rule and GCR 1963, 116, the subject matter of which is accelerated judgment based upon claims of lack of jurisdiction, lack of legal capacity to sue, prior suit pending, and other special defenses which, if established, would bar an otherwise validly asserted claim, were designed to provide comprehensively means for terminating litigation prior to trial, but only in certain expressly enumerated circumstances by no means universally applicable to every suit in the State.

Whereas Rule 116 incorporates all of the grounds which had been *expressly* set forth in our former Court Rule No 18 (1945) for pretrial motions to dismiss,[2] Rule 117, while speaking in terms only of sum-

---

[2] GCR 1963, 116 also adds as a ground for prior-to-trial dismissal of claims, that the claim is barred because of payment, a ground not covered formerly by Court Rule No 18 (1945).

mary judgment, expressly provides for the use of motions for summary judgment in those circumstances in which, under our former bench practice, a motion to dismiss was appropriate when the basis for the motion was the assertion that the opposing party had failed to state a claim upon which relief could be granted, that is to say, that he had failed to state a cause of action. See GCR 1963, 117.2(1) and *Professional Facilities Corporation* v. *Marks* (1964), 373 Mich 673, 679, 680. In addition, Rule 117 authorizes the use of summary judgment in favor of a party asserting a claim when the opposite party has failed to state a valid defense to such claim. See GCR 1963, 117.2(2). Formerly such relief was available by motion for judgment on the pleadings or as provided by our former Rule 30, §§ 1 and 5, by motion for summary judgment. Finally, Rule 117 incorporates our former summary judgment practice upon a showing that there is no issue of material fact to be determined by the court or jury. See GCR 1963, 117.2(3).

While the note appended to Rule 117 by the joint committee on Michigan procedural revision[3] implies that affidavits may be filed by any party in support of and in opposition to a motion for summary judgment based upon any of the three grounds set forth in Rule 117.2, thereby precipitating "a full blown affidavit trial", the implication is misleading. As under our former dismissal practice for failure of the plaintiff to state a cause of action, motions for summary judgment under Rule 117.2(1), based upon the ground that the opposing party has failed to state a claim upon which relief can be granted, need no affidavit in support, for the simple reason that the ground for the relief requested must, if at all, appear

---

[3] See Stat Ann General Court Rules pp 68–71; 1 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), pp 353–356.— REPORTER.

on the face of the pleading so attacked. The same is true of a motion for summary judgment under Rule 117.2(2), based upon the ground that the opposing party has failed to state a valid defense to the claim asserted against him. In neither of such motions is nonpleaded fact, offered by affidavit or otherwise, pertinent to the issue (failure to state a claim upon which relief can be granted or failure to state a valid defense) presented by such motion. This is not to say, however, that motions for summary judgment predicated upon the grounds set forth in Rule 117.2(1) and (2) may not be joined, in the alternative, with motions for accelerated judgment asserting the right to peremptory dismissal based upon any of the grounds set forth in Rule 116.1, with or without affidavit support, or possibly combined with a motion for summary judgment under Rule 117.2(3) asserting as the ground for such relief the absence of a genuine issue as to any material fact and with or without affidavit support as the circumstances may require. Normally, as Rule 117.3 makes clear, affidavits will be appropriate only in support of or in opposition to motions for summary judgment under Rule 117.2(3) based upon the claim that there is no genuine issue as to any material fact. Even as to such affidavit-supported motions, however, there is no justification whatever for the suggestion that "a full blown affidavit trial" should, or may, occur.

Because we deal here with a summary procedure which strikes at the very heart of a litigant's right to determination of his legal dispute in an adversary judicial proceeding, assured by our common-law traditions of the use of those twin instruments for determination of truth—confrontation of one's accusers and their cross-examination—it is imperative that there be no misunderstanding regarding the very limited use to which summary judgment pro-

cedure properly may be put. In no sense should summary judgment be likened to a trial. Relatively early in the history of summary judgment practice as permitted by court rule in our Federal jurisdictions, from which Federal rule[4] our Rule 117 is very substantially taken, motions for summary judgment asserting the absence of a genuine issue as to any material fact were held to present only a very limited question for a judge's determination, whether there are any material facts genuinely in dispute, and the judge was held precluded from determining, at that stage in the history of a case, what the actual facts were. In *Toebelman* v. *Missouri-Kansas Pipeline Co.* (CCA 3, 1942), 130 F2d 1016, at 1018, Judge Maris put the matter this way:

"Upon a motion for summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried.  *  *  *  All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment."

See, in accord, *Traylor* v. *Black, Sivalls & Bryson, Inc.* (CCA 8, 1951), 189 F2d 213, 216, and *Sarnoff* v. *Ciaglia* (CCA 3, 1947), 165 F2d 167, 168. The foregoing is quoted in 6 Moore's Federal Practice (2d ed, 1953), paragraph 56.15, p 211. Professor Moore also quotes, in accord, the following from Judge Fahy's opinion for the court in *Dewey* v. *Clark,* 86 App DC 137, 143 (180 F2d 766, 772):

"Our study of the question makes the following points clear: (1) Factual issues are not to be tried or resolved by summary judgment procedure; only the existence of a genuine and material factual issue is to be determined. Once it is determined that there is such an issue summary judgment may not be

---

4 Federal Rules of Civil Procedure, Rule No 56.—Reporter.

granted; (2) In making this determination doubts (of course the doubts are not fanciful) are to be resolved against the granting of summary judgment; (3) There may be no genuine issue even though there is a formal issue. Neither a purely formal denial nor, in every case, general allegations, defeat summary judgment. On this point the cases decided by this court must rest on their own facts rather than upon a rigid rule that an assertion and a denial always preclude the granting of summary judgment. Those cases stand for the proposition that formalism is not a substitute for the necessity of a real or genuine issue. Whether the situation falls into the category of formalism or genuineness cannot be decided in the abstract; (4) If conflict appears as to a material fact the summary procedure does not apply unless the evidence on one or the other hand is too incredible to be accepted by reasonable minds or is without legal probative force even if true; (5) To support summary judgment the situation must justify a directed verdict insofar as the facts are concerned."

As in the Federal courts, so here, motions for summary judgment do not require, nor is it permissible to make, fact determinations. Instead, the hearing of such motions, when grounded upon Rule 117.2(3), should be in the nature of an inquiry in advance of trial for the limited purpose of determining whether there is a genuine issue as to any material fact. See *Dulansky* v. *Iowa-Illinois Gas & Electric Co.* (CCA 8, 1951), 191 F2d 881, 883. As the court of appeals for the District of Columbia had occasion to say in *Farrall* v. *District of Columbia Amateur Athletic Union*, 80 App DC 396, 398 (153 F2d 647, 648)[5] there is a great difference be-

---

[5] While the order reviewed was an order of dismissal on motion before trial for failure to state a cause of action, the court of appeals held that the judgment below could not be affirmed either as an order of dismissal on such motion or as a summary judgment

tween an inquiry to determine whether or not there
is an issue of fact and a trial to decide a disputed
issue of fact.  While affidavits may be used in the
inquiry to determine the existence of an issue of
fact, they are totally inappropriate for use in re-
solving disputed issues of fact where direct evidence
thereon is available.

The United States Supreme Court in *United
States* v. *Diebold, Inc.* (1962), 369 US 654, 655 (82
S Ct 993, 8 L ed 2d 176), recently ruled that upon
inquiry to determine the existence of issues of fact
on motion for summary judgment, the Federal courts
must find that such issue exists, thereby precluding
entry of summary judgment, where conflicting in-
ferences "might be permissible".  In other words,
under the Federal practice, after which our State's
summary judgment procedure has been patterned,
the existence of permissible conflicting inferences
which can be drawn from the affidavits, depositions,
and other evidence before the court at its inquiry
on motion for summary judgment, bars the grant
of such relief.

By the same token, when resolution of a disputed
issue of fact, presented by conflicting affidavits or
other proofs, depends upon the credibility of an
affiant or witness, the trial judge engaged in an
inquiry on motion for summary judgment must not
usurp a trial jury's right, nor may he anticipate his
own right as the trial fact finder, if such he may
become later at trial, to determine the affiant's credi-
bility.  Judge Frank, in *Arnstein* v. *Porter* (CCA 2,
1946), 154 F2d 464, a copyright infringement suit,
emphasized the impropriety of granting summary
judgment where the credibility of an affiant may be
crucial to decision of a disputed fact issue thus pre-

_____

in defendants' favor because genuine issues of material facts re-
mained for decision at trial.

sented notwithstanding the opposing party's failure to attempt even to discredit the honesty of affiant by counter-affidavits or other proofs. Quite properly, we believe, Judge Frank underscored the importance of cross-examination at trial when the fact-finding process may turn upon the credibility of a witness (pp 469, 471):

"But even if we were to disregard the improbable aspects of plaintiff's story [contained in a deposition], there remain parts by no means 'fantastic.' On the record now before us, more than a million copies of one of his compositions were sold; copies of others were sold in smaller quantities or distributed to radio stations or band leaders or publishers, or the pieces were publicly performed. If, after hearing both parties testify, the jury disbelieves defendant's denials, it can, from such facts, reasonably infer access. It follows that, as credibility is unavoidably involved, a genuine issue of material fact presents itself. With credibility a vital factor, plaintiff is entitled to a trial where the jury can observe the witnesses while testifying."

"But where, as here, credibility, including that of the defendant, is crucial, summary judgment becomes improper and a trial indispensable. It will not do, in such a case, to say that, since the plaintiff, in the matter presented by his affidavits, has offered nothing which discredits the honesty of the defendant, the latter's deposition must be accepted as true. We think that Rule 56 was not designed thus to foreclose plaintiff's privilege of examining defendant at a trial, especially as to matters peculiarly within defendant's knowledge."

See, also, *Colby* v. *Klune* (CCA 2, 1949), 178 F2d 872, and *Bozant* v. *Bank of New York* (CCA 2, 1946), 156 F2d 787, 790.

While the confrontation clause of the Sixth
Amendment to the United States Constitution guar-
antees the accused in every criminal prosecution,
State and Federal (see *Pointer* v. *Texas* [1965], 380
US 400 [85 S Ct 1065, 13 L ed 2d 923]), the right to
confront and cross-examine his accusers and no such
right in civil cases is exalted by constitutional guar-
antee, nonetheless because such right is implicit in
our historical concepts of due process and of fair
trial, it may not be inappropriate to quote from
*Mattox* v. *United States* (1895), 156 US 237, 242,
243 (15 S Ct 337, 39 L ed 409), relied upon by the
United States Supreme Court in its current term in
*Douglas* v. *Alabama* (1965), 380 US 415 (85 S Ct
1074, 13 L ed 2d 934):

"The primary object of the constitutional provi-
sion in question was to prevent depositions or *ex
parte* affidavits, such as were sometimes admitted
in civil cases, being used against the prisoner in
lieu of a personal examination and cross-examina-
tion of the witness in which the accused has an
opportunity, not only of testing the recollection and
sifting the conscience of the witness, but of com-
pelling him to stand face to face with the jury in
order that they may look at him, and judge by his
demeanor upon the stand and the manner in which
he gives his testimony whether he is worthy of
belief."

In *Arnstein* v. *Porter, supra,* at p 470, Judge Frank
described the importance of cross-examination dur-
ing trial, as distinguished from cross-examination
during the taking of a deposition:

"To be sure, plaintiff examined defendant on depo-
sition. But the right to use depositions for dis-
covery, or for limited purposes at a trial, of course
does not mean that they are to supplant the right
to call and examine the adverse party, if he is avail-

able, before the jury. For the demeanor of wit-
nesses is recognized as a highly useful, even if not
an infallible, method of ascertaining the truth and
accuracy of their narratives. As we have said, 'a
deposition has always been, and still is, treated as
a substitute, a second-best, not to be used when the
original is at hand' for it deprives 'of the advantage
of having the witness before the jury.' It has been
said that as 'the appearance and manner of the
witness' is often 'a complete antidote' to what he
testifies, 'we cannot very well overestimate the im-
portance of having the witness examined and cross-
examined in presence of the court and jury.' Judge
Lumpkin remarked that 'the oral testimony of the wit-
ness, in the presence of the court and jury, is much
better evidence than his deposition can be.' * * *
Coxe, J., noted that 'a witness may convince all who
hear him testify that he is disingenuous and untruth-
ful, and yet his testimony, when read, may convey
a most favorable impression.' As a deposition 'can-
not give the look or manner of the witness: his hesi-
tation, his doubts, his variations of language, his con-
fidence or precipitancy, his calmness or considera-
tion;' it 'is * * * or it may be, the dead body of
the evidence, without its spirit' * * * 'It is some-
times difficult and impossible to get so full, explicit,
and perspicuous a statement of facts from the wit-
ness through a deposition as it is by his examination
before court and jury.' 'The right of a party, there-
fore, to have a witness subjected to the personal view
of the jury, is a valuable right, of which he should
not be deprived * * * except by necessity. And
that necessity ceases whenever the witness is within
the power of the court, and may be produced upon
the trial.' "

By insisting that summary judgment is not avail-
able whenever a presented issue of material fact
turns upon the credibility of an affiant or witness
whose deposition has been taken, we intend thereby

to limit severely the circumstances in which summary judgments properly may be entered. The alternative would require our abandonment of what has been called the "truth-testing process of cross-examination" and would encourage unwarranted invasion by judges of the jury's exclusive province. *United States* v. *United Marketing Association* (CCA 8, 1961), 291 F2d 851, 853, 854.

In the *United Marketing Case,* the court quoted (p 854) from *Sartor* v. *Arkansas Natural Gas Corporation* (1944), 321 US 620 (64 S Ct 724, 88 L ed 967), in which case Mr. Justice Jackson, relying upon *Sonnentheil* v. *Christian Moerlein Brewing Company* (1899), 172 US 401 (19 S Ct 233, 43 L ed 492), in reversing a summary judgment, noted that a presented issue of fact turning upon the credibility of an affiant, particularly when he is interested in the result of the litigation, requires submission of the witness' credibility to the jury as a question of fact.

*Sartor,* in turn, recently has been relied upon by the Federal Supreme Court in *Poller* v. *Columbia Broadcasting System, Inc.* (1962), 368 US 464 (82 S Ct 486, 7 L ed 2d 458). *Poller* subsequently was itself relied upon in *White Motor Co.* v. *United States* (1963), 372 US 253 (83 S Ct 696, 9 L ed 2d 738). Mr. Justice Clark, speaking for the court in *Poller,* at p 473, framed the controlling considerations on grant or denial of summary judgment thusly:

"We look at the record on summary judgment in the light most favorable to Poller, the party opposing the motion, and conclude here that it should not have been granted. We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the

weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even-handed justice.' "

We do not read Justice Clark's language as suggesting that summary judgment is any more readily available when affiants present themselves for cross-examination at the time of the inquiry on motion for summary judgment than when such inquiry is based exclusively upon affidavits, depositions, admissions, documentary evidence and other like proof. While such cross-examination at such summary judgment inquiry conceivably might assist in determining whether or not there are genuine issues of material fact (for example, by disclosing on cross-examination the existence of facts not included in the witness' affidavit, and perhaps not theretofore known to the party opposing the motion, which create an issue of fact for ultimate determination by the fact finder at the trial), such cross-examination at such time can be "no substitute for trial by a jury which so long has been the hallmark of 'even-handed justice.' "

While the Supreme Court in *Poller* had before it for decision a case involving complex antitrust issues, what it had to say about the inapplicability of summary judgment procedure in such litigation, "where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot", is equally apt in any other type of litigation in which such factors are involved. For example, Professor Moore in his treatise, *supra,* at page 2102, says that "Summary judgment will normally not be warranted in an action based on negligence, unless a defendant is asserting an affirmative defense, such as *res judicata,* discharge in bankruptcy, or the statute of limita-

tions, and this affirmative defense can be established with certainty." This is not to say that summary judgment is never warranted in negligence actions unless such affirmative defenses are asserted, as Professor Moore himself concedes. See, particularly, his treatise at paragraph 56.17[42] (pp 2231–2234).

The authors of 1 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed, 1962), at page 360, considered the same subject matter and concluded as follows:

"Summary judgment should be considered applicable in any type of action where one of the grounds prescribed in sub-rule 117.2 is present. Grounds (1) and (2), relating to the legal validity of a claim or defense, are likely to arise in any type of case without particular reference to subject matter or form of action. As to ground (3), the traditional area for summary judgment, contract cases will continue to preponderate, *but only for the functional reason that disputed factual issues are more likely to be missing in such cases than in tort cases, for example.*

"In negligence cases, even though there may be no dispute as to the quantitative or physical facts, summary judgment will almost always be inappropriate *because the qualitative issue of whether defendant exercised reasonable care will be in dispute and must be left for the jury,* unless on the undisputed physical facts a judge would say that a directed verdict would be required—which is to say that there really is no negligence issue for the jury. In such cases summary judgment has been allowed in negligence cases and should be." (Emphasis added.)

See our recent decision so holding in *Miller* v. *Miller* (1964), 373 Mich 519, 524. The Federal courts have reached essentially the same conclusion with refer-

ence to the *usual* inapplicability of summary judgment procedures to negligence cases. See *Roucher v. Traders & General Insurance Company* (CCA 5, 1956), 235 F2d 423, 424, and *Berry* v. *Atlantic Coast Line R. Co.* (CCA 4, 1960), 273 F2d 572, 582 (certiorari denied 362 US 976 [80 S Ct 1060, 4 L ed 2d 1011]).

. While summary judgments were rarely granted under our former practice, and quite properly so in our view, as indicated above we discern a disturbing tendency among our trial judges to grant such motions under our currently applicable rules in circumstances in which even the most "zealous advocate" or "overworked or impatient judge", to quote authors Honigman and Hawkins again, *supra,* at page 361, would not have granted summary judgment under our former practice.[6] In addition to the technical limitations upon the availability of summary judgment which we have discussed above, there is a very practical consideration which should be taken into account whenever a judge of our trial

[6] The circuit court for the second circuit in *Colby* v. *Klune, supra,* discerned a similar disturbing tendency among its trial judges. In that case, the court's opinion begins with the following preface (p 872):

"We have in this case one more regrettable instance of an effort to save time by an improper reversion to 'trial by affidavit', improper because there is involved an issue of fact, turning on credibility. Trial on oral testimony, with the opportunity to examine and cross-examine witnesses in open court, has often been acclaimed as one of the persistent, distinctive, and most valuable features of the common-law system. For only in such a trial can the trier of the facts (trial judge or jury) observe the witnesses' demeanor; and that demeanor—absent, of course, when trial is by affidavit or deposition—is recognized as an important clue to witness' credibility. When, then, as here, the ascertainment (as near as may be) of the facts of a case turns on credibility, a triable issue of fact exists, and the granting of a summary judgment is error. It did not cure the error that each side moved for such a judgment in its favor.

"We hear much of crowded trial dockets as the cause of deplorable delays in the administration of justice. The way to eliminate that congestion is by the appointment of a sufficient number of judges, not by doing injustice through depriving litigants of a fair method of trial."

courts has presented to him a motion for summary judgment, particularly if based upon Rule 117.2(3). That practical consideration is simply that an error in granting summary judgment, if reversed on appeal, causes not only a financial burden to be cast upon both litigants but it also causes delay in the ultimate disposition of the litigation, a delay the motion erroneously granted itself sought to avoid. Judge Frank, speaking for his court in *Doehler Metal Furniture Co.* v. *United States* (CCA 2, 1945), 149 F2d 130, at 135, wrote the following admonition to that circuit's trial judges, which we hereby adopt:

"We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable. Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt dispatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay. * * * The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered."

The motions for summary judgment filed by defendants Van Dusen, Elliott, and Romney conceded, in practical effect, the legal adequacy of the causes of action asserted against them. Their motions challenged, instead, plaintiff's ability to prove his asserted charges. By affidavits the three defendants sought to force plaintiff to disclose either that he had or that he did not have some evidence of defendants' complicity in the publication of the allegedly libelous document and in the alleged conspiracy. Rule 117.3 makes clear that determination of a mo-

tion for summary judgment asserting, under Rule
117.2(3), that there is no genuine issue as to a ma-
terial fact must be determined on the basis of "the
affidavits or other proof" and that it is not sufficient
to resist such a motion, if the motion is supported
by affidavits or other proofs, to rely solely upon the
averments pleaded by the party opposing the mo-
tion. While such reliance may be placed upon plead-
ings in urging or resisting summary judgment based
upon Rule 117.2(1) or (2), when the summary judg-
ment sought asserts the absence of a genuine issue
of material fact under Rule 117.2(3) and is supported
by affidavit or other proofs, the opposing party must
come forward with affidavits or other proofs of his
own to establish that a genuine issue of material
fact does exist.[7] Such, indeed, was our practice in
this State even under our former Court Rule No
30 (1945). See *Podvin* v. *St. Joseph Hospital* (1963),
369 Mich 65, 67, 68.

Thus, had plaintiff submitted to the trial court
any evidence whatever, by affidavit, deposition, or
otherwise, that defendants did participate, directly
or indirectly, in the preparation or publication of
the allegedly libelous document or in the conspiracy
charged, it is clear that the trial judge would have
been precluded from granting defendants' motions
for summary judgment simply because there would
have been genuine issues of material fact requiring
full trial for their resolution.

---

[7] It is interesting to note that because of equivocal language which
formerly appeared in Rule 56 of the Federal rules of civil procedure,
some Federal courts, particularly in the third circuit, permitted
reliance upon pleadings in support of or in opposition to motions
for summary judgment based upon the claim that no genuine issue
of material fact exists. Notwithstanding the rule's language, most
of the Federal courts required affidavits or other proofs. In 1963,
the problem was resolved by amendment of Rule 56(e) so that now
a party opposing such a motion may not rest upon his pleading but
must, by affidavit or by other proofs, set forth specific facts showing
there is a genuine issue for trial. As noted, our Rule 117.3 clearly
requires the same kind of proofs to meet the thrust of such a motion.

Instead, however, plaintiff chose to file affidavits (see two of them set forth in the appendix at the end of this opinion) which were not responsive to the defendants' affidavits, which were in part based upon information and belief instead of personal knowledge of the affiant, and which were cast in conclusionary language instead of stating with particularity facts which would be admissible as evidence. In short, the plaintiff's affidavits were inadequate to bar entry of summary judgment on defendants' motions *if otherwise defendants were entitled thereto.*

This brings us to a consideration of defendants' affidavits to determine their adequacy to support the summary judgments entered. Defendants' affidavits, essentially alike (see defendant Van Dusen's affidavit set forth in the appendix at the end of this opinion), set forth with particularity the admissible facts that prior to its publication they had no knowledge of exhibit A, the allegedly libelous document, nor did they know that it was being prepared; that they had nothing whatever to do with the preparation or publication of exhibit A; and that they did nothing whatever, individually or as part of a conspiracy, to make any of the accusations against the plaintiff contained in exhibit A. If the facts alleged in defendants' affidavits are true, plaintiff's claims against defendants cannot prevail, nor does the plaintiff assert the contrary. Had he disclosed to the trial judge that he had available any evidence whatever that the defendants did in fact know of exhibit A before its publication and that they had in any way contributed to its compilation or assisted in any way in its subsequent publication, or that they had combined with others for the purpose of exhibit A's publication, quite clearly a genuine dispute of material fact would have been presented precluding. the summary judgments that were entered.

As in the Federal practice, since 1963 made explicit in amended Rule 56(e), our practice under GCR 1963, 117.3 does not permit reliance upon plaintiff's pleaded allegations to determine that a genuine issue of material fact exists. Such a finding in this case could be made only if plaintiff's affidavits or other proofs contained evidence refuting the facts stated in defendants' affidavits. Such evidence was lacking totally from plaintiff's affidavits and his counsel was unable to show the court any evidence from the depositions taken or from any other source to establish that if permitted to go to trial there would be any genuine issue of material fact to be decided by a jury or by the judge trying the case without a jury. Under such circumstances summary judgment properly was entered for each of the defendants.

Affirmed. Costs to defendants.

T. M. Kavanagh, C. J., and Smith, J., concurred with Souris, J.

Kelly and Black, JJ., did not sit.

### Appendix.

"Richard C. Van Dusen, being first duly sworn, deposes and says as follows:

"1. I am a defendant in the above-entitled cause.

"2. I have personal knowledge of the facts herein stated and I am prepared, if sworn as a witness, to testify fully and competently with respect thereto.

"3. I make this affidavit in support of my motion for summary judgment in the above-entitled cause to which this affidavit is attached.

"4. I did not at any time either individually or in participation or association or conspiracy with any other defendants or alleged coconspirators named in the plaintiff's amended complaint or in the proposed

amendment attached to the motion of plaintiff for leave to file an amendment to the amended complaint, or with any other persons, either directly or indirectly, compile any material for, or formulate, prepare, or publish, the document attached to plaintiff's amended complaint and referred to therein as exhibit A.

"5. I did not at any time either individually or in participation or association or conspiracy with any other defendants or alleged coconspirators named in plaintiff's amended complaint or named in the proposed amendment attached to the motion of plaintiff for leave to file an amendment to the amended complaint, or with any other persons, either directly or indirectly, formulate, concoct, prepare, or carry out any plan, agreement, or understanding to make any of the alleged false or libelous accusations or charges against the plaintiff set forth in said exhibit A.

"6. I did not discuss the compilation, formulation, preparation, publication, or distribution of said exhibit A with any other defendants or alleged coconspirators named in plaintiff's amended complaint or named in the proposed amendment attached to the motion of plaintiff for leave to file an amendment to the amended complaint, or with any other persons, prior to the time of its publication.

"7. I did not at any time agree with any other defendants or alleged coconspirators named in the plaintiff's amended complaint or named in the proposed amendment attached to the motion of plaintiff for leave to file an amendment to the amended complaint, or with any other persons, either directly or indirectly, to take whatever action, either jointly or severally, which might be deemed necessary and/or expedient to oust the plaintiff from his position in the Republican party for the 14th congressional district of Michigan.

"8. I did not at any time aid, abet, or encourage any other defendants or alleged coconspirators

named in the plaintiff's amended complaint or named in the proposed amendment attached to the motion of plaintiff for leave to file an amendment to the amended complaint, or any other persons, either directly or indirectly, in the compilation, formulation, preparation, publication, or distribution of said exhibit A to any person, newspaper, news agency or, any other agency or communication media.

"9. I had no knowledge of the existence of said exhibit A or that it was being compiled, formulated, prepared, published, or distributed, prior to its publication in newspapers of the city of Detroit.

"10. I shall appear before the Honorable Joseph A. Moynihan, circuit judge, Wayne county, Michigan, at the date and hour set for the hearing of the motion for summary judgment to which this affidavit is attached, for the purpose of testifying under oath as to the facts herein set forth and for the purpose of permitting counsel for the plaintiff in this action to cross-examine me as to any matters relating to the facts set forth in this affidavit.

"RICHARD C. VAN DUSEN"

— — —

"Richard Durant, being duly sworn, deposes and says that he is the plaintiff in the above entitled cause and that he makes this affidavit in opposition to the motion of defendant Richard Van Dusen for summary judgment.

"Answering paragraph 4 of the affidavit of said defendant Van Dusen, plaintiff and deponent says that he denies the same, and says that in fact, in the answer to paragraph 4 count 2 of plaintiff's amended complaint, said defendant Van Dusen admitted that 'this defendant (Richard Van Dusen) participated during 1962 in activity designed to supplant plaintiff with other Republican leadership in the 14th congressional district of Michigan, but denies such participation took illegal means,'

"Further answering, deponent says that defendant Van Dusen, working in collaboration with the other defendants and coconspirators, was ready to and did undertake any and all means to effectuate their common purpose; that in this common purpose there was considered and then embarked upon a personal attack against deponent which culminated in the preparation and publication of exhibit A; that the defendants and coconspirators, including defendant Van Dusen, knew that such attack was to be made and acquiesced therein.

"Answering paragraph 5 of said affidavit, plaintiff and deponent denies the same, and relies upon his answer to paragraph 4, above.

"Answering paragraph 6, deponent denies the same and relies upon his previous answer.

"Answering paragraph 7, deponent says that as he is informed and verily believes it to be true and charges the fact to be, the attack upon this deponent on the part of the defendants and coconspirators involves the jockeying for position on the part of defendants as to who shall control the Michigan delegates to the Republican Convention in 1964, and that defendants and coconspirators were fearful that the plaintiff, a well known conservative and supporter of Senator Barry Goldwater, might, as a leader of the 14th Republican district, be persuasive and influential in convincing those who would be delegates to support Senator Goldwater for president; that the defendants and coconspirators in their determination to prevent plaintiff from being in a position of influence as hereinabove set forth, did embark upon an all-out campaign and concerted action to employ any and all means and methods to that end; that the use of libelous statements attacking plaintiff, and particularly libelous statement exhibit A, was common knowledge among the defendants and coconspirators, as deponent has learned since the above suit was started and depositions taken.

"Answering paragraph 8, deponent denies the same by reference to previous paragraphs herein. '

"Answering paragraph 9, deponent denies the same by reference to previous paragraphs herein.

"And further deponent saith not.

"/s/ RICHARD DURANT"

— — —

"Richard Durant, being duly sworn, deposes and says that he is the plaintiff in the above entitled cause and that he makes this affidavit in opposition to the motion of defendant George Romney for summary judgment.

"Deponent further says that he denies the statements contained in paragraph 4 of the affidavit of defendant George Romney, and in further answer says that about January 1962, said defendant George Romney requested that a committee be organized to eliminate plaintiff from his position of leadership in the 14th congressional district of the Republican party; that as deponent is informed and believes to be true and charges the fact to be, said defendant Romney called upon a number of the defendants to form such a committee, namely, Paul Bagwell, Charles King, George Bashara, Jr., Wilbur M. Brucker, Sr., Robert Waldron, Allen Merrell, and others named as coconspirators, to carry out the program of such elimination; that in the political activity of George Romney in his campaign for governor, he employed coconspirator Thomas McIntyre as his public relations and publicity director, and that said Thomas McIntyre did, in association with other defendants, prepare a libelous document attacking this deponent, and that, as deponent is informed and believes to be true and charges the fact to be, the intent and determination to issue a libelous statement attacking deponent was discussed among all of the defendants and it became a matter of common knowledge among the defendants and coconspirators that a libelous attack was to be made upon this deponent.

"Deponent further says that defendants Van Dusen and Elliott were in constant rapport with defendants George Romney and Paul Bagwell, and other defendants and coconspirators, and deponent is informed and believes it to be true that at all times defendant George Romney and other defendants and coconspirators knew of this impending attack and acquiesced therein.

"Answering paragraph 5, deponent denies the same, relying upon his assertions in the previous paragraphs.

"Answering paragraph 6, deponent denies the same, and in furtherance of his denial will rely upon previous paragraphs herein, the pleadings in this cause, and depositions taken and filed.

"Answering paragraph 7, deponent denies the same, and further answering says, upon information and belief, that defendant George Romney's publicity director and coconspirator, Thomas McIntyre, did with the approval of said defendant George Romney and the other defendants, prepare a certain libelous document containing some of the material later appearing in exhibit A; that deponent is informed and believes it to be true and charges the fact to be that there was constant communication between and among the defendants and coconspirators; that as has been testified to by defendant Charles Ferry on discovery deposition, in substance, the libelous attack contained in exhibit A would be the 'number-one punch', and the direct attack upon the plaintiff by defendant George Romney would be the 'number-two punch'; that all of the activities as described in the plaintiff's amended complaint and the proposed amendment to the amended complaint, were carried out as a deliberate plan and conspiracy on the part of all defendants and coconspirators, to the end that plaintiff would be driven out of Republican party leadership.

"Deponent further says that the defendants and coconspirators were determined to eliminate the plaintiff from political activity and especially from

the leadership in the 14th congressional district, by any means, legal or illegal, and were ready to and did use any means, legal and/or illegal, to effectuate that purpose.

"Answering paragraph 8, deponent denies the same by reference to the previous paragraphs herein, and further answering says, upon information and belief, that said defendant George Romney was in constant communication with defendant Martin Hayden and that defendant George Romney was kept informed at all times of these various steps that were being taken in furtherance of the common plan, and acquiesced therein, and particularly in the preparation and publication of exhibit A.

"Answering paragraph 9, deponent denies the same, for the reasons already stated.

"Further answering said motion, deponent says that he is informed and believes it to be true and charges the fact to be that the attack upon deponent on the part of the defendants and coconspirators involves the jockeying for position on the part of defendants as to who shall control the Michigan delegates to the Republican convention in 1964, and that defendants and coconspirators were fearful that the plaintiff, a well known conservative and supporter of Senator Barry Goldwater, might, as a leader of the 14th Republican district, be persuasive and influential in convincing those who would be delegates to support Senator Goldwater for president; that the defendants and coconspirators in their determination to prevent plaintiff from being in a position of influence as hereinabove set forth, did embark upon an all-out campaign and concerted action to employ any and all means to that end; that the use of libelous statements attacking plaintiff, and particularly libelous statement exhibit A, was common knowledge among the defendants and coconspirators, as deponent has learned since the above suit was started and depositions taken.

"And further deponent saith not.

"/s/ RICHARD DURANT"