McCART v J WALTER THOMPSON USA, INC

Docket No. 87309. Argued October 2, 1990 (Calendar No. 4). Decided April 5, 1991. Separate opinion by Levin, J., filed April 8, 1991.

Dennis McCart brought a wrongful discharge action in the Wayne Circuit Court against J. Walter Thompson U.S.A., Inc., alleging breach of an oral contract of permanent employment terminable for just cause. The court, Robert J. Colombo, Jr., granted summary disposition for the defendant, finding that the plaintiff failed to provide any evidentiary support for the claim that he was laid off for punitive and not economic reasons. The Court of Appeals, Hood, P.J., and Beasley and Shepherd, JJ., reversed in an opinion per curiam, finding that a factual issue existed regarding the reasons for termination (Docket No. 109434). The defendant appeals.

In an opinion by Chief Justice Cavanagh, joined by Justices Brickley, Boyle, Riley, and Griffin, the Supreme Court *held:*

The plaintiff failed to show the existence of a genuine issue of fact material to his wrongful discharge claim. He presented no evidence in response to the defendant's motion for summary disposition to demonstrate that he was not discharged for bona fide economic reasons.

MCR 2.116(G)(4) requires that a party opposing a motion for summary disposition must introduce additional evidence beyond its pleadings and briefs to show that there is a genuine issue of material fact. The plaintiff completely failed to carry his burden. Bona fide economic reasons for discharge constitute just cause for termination of employment. In this case, the situation, as presented by the defendant's proofs, amounts to no more than termination resulting from an economically motivated work-force reduction.

Reversed; summary disposition reinstated.

Justice Levin, writing separately, stated that there was a genuine issue of material fact whether the plaintiff's termination was a result of a reduction of work force or was punitive, in violation of his contract of employment.

While the plaintiff did not dispute the defendant's proofs that adverse business conditions existed, he did raise a genuine issue

of fact regarding whether the elimination of his position truly was based on those conditions, and there was evidence to demonstrate that he was not discharged for bona fide economic reasons. In addition, the credibility of the defendant's president clearly was in issue.

Justice MALLETT took no part in the decision of this case.

181 Mich App 611; 450 NW2d 10 (1989) reversed.

*Eric J. McCann, P.C.,* for the plaintiff.

*Bodman, Longley & Dahling* (by *James J. Walsh* and *David P. Larsen*); (*Richard Pollet,* of counsel), for the defendant.

Amici Curiae:

*Miller, Canfield, Paddock & Stone* (by *Diane M. Soubly* and *John H. Willems*) for American Society of Employers, Motor Vehicle Manufacturers Association of the United States, Inc., Greater Detroit Chamber of Commerce, and Michigan State Chamber of Commerce.

*Conboy, Fell, Stack, Lieder & Hanson* (by *Lloyd C. Fell*) for General Motors Corporation.

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, J. Walker Henry, Rachelle G. Silberberg,* and *Jennifer S. Buckley*) for Michigan Manufacturers Association.

*Mark Granzotto, Monica Farris Linkner,* and *Charles P. Burbach* for Michigan Trial Lawyers Association.

CAVANAGH, C.J. Defendant J. Walter Thompson U.S.A., Inc., appeals from the Court of Appeals decision reversing the trial court's grant of defendant's motion for summary disposition under MCR 2.116(C)(10). 181 Mich App 611; 450 NW2d 10 (1989). This Court granted defendant's application for leave to appeal, limited to the following ques-

tions: "(1) whether there was a genuine issue of fact as to whether plaintiff's employment was terminated for economic reasons only, and (2) assuming there was a genuine issue of fact regarding the reason(s) for the plaintiff's discharge, was that factual issue material." 434 Mich 911 (1990).

We find that plaintiff failed to show the existence of a genuine issue of fact material to his wrongful discharge claim. Plaintiff conceded that defendant was discharging employees because of economic hardship, and presented no evidence, in response to defendant's summary disposition motion and supporting evidence, sufficient to raise a jury question whether defendant discharged him for bona fide economic reasons.

Accordingly, we reverse.

### I. FACTS

Plaintiff was senior vice-president for defendant at the time of his termination in November 1986. He had been with defendant continuously since 1976, working the last eight years on an advertising account with Burger King Corporation. At the time of his termination, plaintiff was account director for Burger King field marketing, with an annual salary of $111,140 as of 1985. Although he resided and worked out of defendant's offices in Michigan, he was part of defendant's New York office.

Defendant informed plaintiff that his position was being eliminated as part of a work-force reduction.[1] Plaintiff was notified of his termination by his immediate supervisor, Robert Norsworthy. A few days later, plaintiff received a letter signed by defendant's corporate officer, Stephen Bowen,

---

[1] In addition to plaintiff, approximately one hundred of defendant's employees were fired from the New York office as part of the work reduction.

informing plaintiff that his employment would be discontinued.[2]

Plaintiff filed a complaint against defendant in April 1987, alleging: (1) plaintiff had an oral contract for employment that could only be terminated for just cause, (2) plaintiff was fired without cause, and (3) plaintiff's discharge was in breach of his contract with defendant. Defendant's answer included the affirmative defense that plaintiff had been terminated as a part of its work-force reduction.

After discovery, defendant filed a motion for summary disposition, alleging pursuant to MCR 2.116(C)(10) that no genuine issue of material fact existed regarding whether plaintiff's employment was terminated as part of a work-force reduction. In support of the motion, defendant offered the deposition testimony of plaintiff and Bowen, and documentary evidence relating to plaintiff's employment history and a Burger King restaurant franchisee application. Bowen's testimony cited economic factors affecting the company, efforts to reduce the work force in unprofitable areas, and the nonessential nature of plaintiff's position.

For purposes of its motion only, defendant conceded that plaintiff had an oral contract of permanent employment terminable only for good cause. Additionally, defendant allowed that plaintiff's performance was not at issue. Defendant contended nonetheless that it was entitled to judg-

---

[2] In pertinent part, Bowen's letter read:

I'm very sorry to inform you that, *as part of a significant cost reduction in JWT-NY,* we will not be able to continue your employment. . . . Very simply stated, client budgets are *not growing* at the same rate as agency costs and, based on our known revenue projections for JWT-NY in 1987, *we have had to reduce our costs going into the year.* [Emphasis added.]

ment because plaintiff's position was eliminated for economic reasons as part of the work-force reduction, and, therefore, his termination was for nonactionable just cause as a matter of law.

In opposition to defendant's motion, plaintiff contended that (1) plaintiff's termination had "nothing to do with the reduction in work-force," but was actually a punitive discharge by Bowen, (2) plaintiff had a lifetime good-cause employment contract, (3) Norsworthy would testify "in support of Plaintiff's case, and will verify the facts contained herein," (4) defendant attempted to disguise the true nature of plaintiff's discharge by doing it in the course of a work layoff, (5) plaintiff was offered a bonus and raise shortly before his termination, indicating his value to the company and, in a typical work-force reduction, a highly paid and valued employee would not be let go, and (6) "numerous factual disputes" existed such as the terms of the contract, the reason for discharge, and the method utilized by defendant to accomplish the discharge. Plaintiff conceded, however, that defendant was, at the time, reducing its work force for economic reasons.

The trial court granted defendant's motion for summary disposition. Citing MCR 2.116(G)(4), which requires that the adverse party on a motion for summary disposition must introduce additional evidence beyond its pleadings and briefs to show there is a genuine issue of material fact, the court held: "Plaintiff has failed to provide any evidentiary support for his claim that he was laid off for punitive reasons and not economic reasons."

The Court of Appeals reversed, reasoning that although "there is nothing in the record to indicate that plaintiff's position was terminated for reasons other than economic motivation," 181 Mich App 616, the evidence did not show that

plaintiff was hired only for the one position he had held, and that plaintiff had cited certain incidents which allegedly contributed to Bowen's dislike of him. The Court held that "the employer must establish economic motivation to terminate the particular employee, as opposed to the employee's position, where the employee has a just cause contract and the employer has reasonable alternative options for the employee within the organization." *Id.* at 617-618. The Court concluded that "[b]ecause we are unable to say that it will be impossible for plaintiff to factually support his position at trial, we hold that the grant of summary disposition was inappropriate." *Id.* at 618.

## II. ANALYSIS

Plaintiff argues that this Court's decision in *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), governs this dispute. In *Toussaint,* this Court held that an employee may have an enforceable right not to be terminated except for just cause, grounded in either an express oral or written contract or in legitimate expectations arising from an employer's policy statements. See *id.* at 598-599. We conclude, however, as the Court of Appeals has held, that bona fide economic reasons for discharge constitute "just cause" under *Toussaint.* See *Friske v Jasinski Builders, Inc,* 156 Mich App 468, 472; 402 NW2d 42 (1986); *Bhogaonker v Metropolitan Hosp,* 164 Mich App 563, 565-566; 417 NW2d 501 (1987).[3]

In the instant case, while plaintiff alleges that Bowen disliked him, he has failed to raise any genuine issue of fact regarding the validity of

[3] See also, e.g., *Nora v Carrier Corp,* 861 F2d 457, 461 (CA 6, 1988); *Nixon v Celotex Corp,* 693 F Supp 547, 556 (WD Mich, 1988); *Parker v Diamond Crystal Salt Co,* 683 F Supp 168, 173 (WD Mich, 1988).

defendant's proofs that adverse business conditions existed and that the elimination of plaintiff's position was necessitated by those conditions. Indeed, plaintiff conceded that defendant was instituting layoffs for economic reasons at the time. The objective circumstances, as presented by defendant's proofs, indicate no more than a termination resulting from an economically motivated workforce reduction.

"When properly challenged, plaintiff must establish that he has a case on the law and that there are some evidentiary proofs to support his allegations as to any material fact." *Durant v Stahlin,* 375 Mich 628, 638; 135 NW2d 392 (1965). Under MCR 2.116(G)(4), a party opposing a motion for summary disposition is required to respond with affidavits or other evidentiary materials to show the existence of a factual dispute, rather than relying on the allegations or denials in the pleadings. In this case, plaintiff did not specify any facts in opposition to defendant's motion in any "[a]ffidavits, depositions, admissions, or other documentary evidence," MCR 2.116(G)(3), instead simply stating in his responsive pleading that he would produce at trial evidence that defendant's economic necessity rationale was a pretext.[4]

This case thus stands in marked contrast to the recent Court of Appeals decision in *Ewers v Stroh Brewery Co,* 178 Mich App 371; 443 NW2d 504 (1989), where "plaintiff relied on deposition and documentary evidence which he argued indicated

[4] Such a mere promise to offer factual support at trial was categorized as a "pleading" under the pre-1985 court rules, see, e.g., *Rizzo v Kretschmer,* 389 Mich 363, 377; 207 NW2d 316 (1973), and, as such, is precisely what is now insufficient under the new requirements of MCR 2.116(G)(4), enacted in 1985. See Staff Comment to MCR 2.116: "Subrule (G)(4) is new. . . . [L]anguage . . . is added, *requiring* the party opposing the motion to respond with affidavits or other evidentiary materials . . . , rather than relying on the allegations or denials in pleadings." (Emphasis added.)

that defendant was experiencing substantial economic growth and operating at a substantial profit before and after his discharge." *Id.* at 375. Because plaintiff failed to carry his burden under MCR 2.116(G)(4), we need not address the issue discussed by the Court of Appeals regarding whether the defendant must demonstrate economic reasons not only for the elimination of a just-cause employee's position, but for the termination of the employee as an individual as well. See 181 Mich App 617-618. In the absence of any sufficient response from plaintiff, defendant's proofs in this case were adequate to support summary disposition on the ground that plaintiff's termination was for bona fide economic reasons.

### III. CONCLUSION

For the reasons stated, we reverse the judgment of the Court of Appeals and reinstate the trial court's grant of summary disposition for defendant.

BRICKLEY, BOYLE, RILEY, and GRIFFIN, JJ., concurred with CAVANAGH, C.J.

The following opinion was filed with the Clerk of the Supreme Court on April 8, 1991, after the release of the opinion of the Court on April 5, 1991—REPORTER.

LEVIN, J. Dennis McCart was a senior vice president of J. Walter Thompson U.S.A., Inc., an advertising agency. McCart commenced this action against J. Walter Thompson after he was discharged from his employment in November, 1986. McCart claimed that J. Walter Thompson had agreed that he could not be discharged except for good cause, and that his employment was terminated without good cause.

J. Walter Thompson moved for summary disposition on the ground that there was no genuine

issue as to any material fact.[1] For purposes of the
motion, J. Walter Thompson did not dispute Mc-
Cart's contention that he had an "oral contract for
permanent employment that could be terminated
only for good cause." J. Walter Thompson asserted
that it was entitled to a judgment of dismissal
because "it is not disputed" that McCart's employ-
ment was terminated when his position was elimi-
nated "as part of a reduction in force."

I

J. Walter Thompson's assertion that there is no
genuine issue whether McCart's employment was
terminated when his position was eliminated as
part of a reduction in force is, in a sense, undis-
puted. The *timing* of the termination of his em-
ployment did, indeed, coincide with a reduction in
the work force and the discharge of a number of
other employees.

McCart did, however, dispute whether the rea-
son for his discharge was a reduction in work
force. McCart asserted, in an answer to J. Walter
Thompson's motion, that the termination of his
employment "had nothing to do with the reduction
in work force, but was a punitive discharge by
Defendant's President, Steve Bowen, in violation of
Plaintiff's contract of employment." McCart as-
serted that J. Walter Thompson had "attempted to
disguise Plaintiff's discharge by doing it in the
course of a work reduction layoff, but such attempt

---

[1]   (C) Grounds. The motion may be based on one or more of
these grounds, and must specify the grounds on which it is
based:

* * *

(10) Except as to the amount of damages, there is no genuine
issue as to any material fact, and the moving party is entitled
to judgment or partial judgment as a matter of law. [MCR
2.116(C)(10).]

was a ruse."[2] McCart added that he would "pro-
duce[3] the testimony of his former boss, Robert
Norsworthy, who will testify in support of
Plaintiff's case, and will verify the facts contained
herein."

II

The majority faults McCart because he did not
file an affidavit[4] or other evidentiary materials, but

---

[2]  It is equally apparent that employers cannot use the defense
of economic necessity as a pretext "for discharges which would
otherwise be subject to a just cause attack by the employee."
*Ewers v Stroh Brewery Co,* 178 Mich App 371 [378]; 443 NW2d
504 (1989). The legitimacy of the employer's economic necessity
defense is reviewable by a jury to determine "whether 'eco-
nomic necessity' was [the employer's] true reason for discharg-
ing [the employee]." [*Zoerb v Chugach Electric Ass'n, Inc,* 798
P2d 1258, 1263 (Alas, 1990).]

> We believe that in the case of a reduction in force due to
> economic reasons, as between two persons of equal ability, the
> one who has a lifetime contract is to be preferred for retention
> over the one who does not. [*Gesina v General Electric Co,* 162
> Ariz 35, 37; 780 P2d 1376 (1989).]

[3] See n 19.

[4] J. Walter Thompson's motion was *not* supported by an affidavit.
Rather, the motion was based on *McCart's deposition* and J. Walter
Thompson's brief; the motion stated that it was made

> on the grounds that there is no genuine issue of material fact
> that plaintiff's employment was terminated when his position
> was eliminated as part of a reduction in force.
> In support of this motion, defendant submits the deposition of
> *plaintiff* and the attached supporting *brief.* [Emphasis added.
> Excerpts from Bowen's deposition were quoted in J. Walter
> Thompson's brief.]

The obligation of the moving party, J. Walter Thompson, is to
"specifically identify the issues as to which the moving party believes
there is no genuine issue as to any material fact." See n 6 for text.
Although J. Walter Thompson had taken McCart's deposition,
wherein he had challenged the bona fides of the asserted reason for
discharging him (see part v) and Bowen had been questioned regard-
ing that issue (*id.*), J. Walter Thompson's motion did not "specifically"
identify the pivotal issue in this case as to which it asserted there is

"simply stat[ed] in his responsive pleading that he would produce at trial evidence that defendant's economic necessity rationale was a pretext," and concludes that McCart "failed to carry his burden" under the court rule.[5]

Motions for summary disposition asserting that there is no genuine issue as to any material fact are, indeed, generally supported and opposed with affidavits. The court rule does not, however, require that the motion be supported or opposed in all events by affidavit. The court rule states, rather, that the showing required by an opposing party cannot be made by "rest[ing] upon the mere allegations or denials of his or her *pleading* . . . ." (Emphasis added.) The showing must be made, instead, "by affidavits or as otherwise provided in this rule . . . ."[6] The rule provides that "affidavits,

---

no genuine issue of material fact: whether the stated reason for discharging McCart, economic necessity, was the reason, or whether the reason was personal animus.

J. Walter Thompson did not, in its motion, contend, as it had in its brief, that the reduction in work force or the elimination of McCart's position was prompted by economic necessity. The motion contended only that McCart's "employment was terminated when his position was eliminated *as part* of a reduction in force" (emphasis added), and, thus, the motion simply stated the obvious: the timing of the termination of McCart's employment coincided with, and in that sense was "part of," a reduction in the work force.

J. Walter Thompson's motion, thus, avoided "specifically identify-[ing] the issue"—the bona fides of its stated reason for discharging McCart—to which it asserted there is no genuine issue of material fact.

[5] *Ante,* pp 115-116.

[6]   A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her. [MCR 2.116(G)(4).]

depositions, admissions, or other documentary evidence may be submitted by a party to support or oppose the grounds asserted in the motion."[7]

### III

J. Walter Thompson pleaded as an affirmative defense that McCart's "employment was terminated as part of a contraction of defendant's work force." The standard jury instructions, applicable in a "wrongful discharge" case, provide that where the plaintiff has carried his burden of showing that the employment relationship could not be terminated except for good or just cause, "[t]he defendant [J. Walter Thompson] has the burden of proving that it had good or just cause to terminate the plaintiff's employment."[8]

The question then arises whether it is J. Walter Thompson's burden to show that the asserted good or just cause—reduction in work force/economic necessity—was not, as McCart asserts, pretextual.

In an employment discrimination case, the plaintiff has the burden of establishing discrimination, whether it be discrimination based on age, religion, race, or sex.[9] When the plaintiff proffers

---

[7] Except as to a motion based on subrule (C)(8) or (9), affidavits, depositions, admissions, or other documentary evidence may be submitted by a party to support or oppose the grounds asserted in the motion. [MCR 2.116(G)(2).]

[8] SJI2d 110.10.

[9] See *Matras v Amoco Oil Co,* 424 Mich 675; 385 NW2d 586 (1986), where this Court held that sufficient evidence was presented to enable a reasonable person to find that age was a *determining* factor in the defendant's decision to discharge the plaintiff, and where this Court said:

To establish a prima facie case of age discrimination when an employer lays off employees for economic reasons, the courts have required the employee *to present sufficient evidence on* the ultimate question—whether age was a determining factor

prima facie evidence of discrimination, the employer must then offer a reason for its action or nonaction negating age, religious, racial, or sexual discrimination.[10] The plaintiff-employee may assert that the reason is pretextual, but nevertheless continues to have the ultimate burden of showing and persuading the trier of fact that there was discrimination.[11]

J. Walter Thompson, which has the ultimate burden of proving its reduction in work force/economic necessity affirmative defense, may, as an aspect of that burden, similarly have the burden of proving that the reason for discharging McCart was its stated reason, economic necessity, and not personal animus.

The burden on a party, such as McCart, oppos-

in the decision to discharge the older protected employee. [*Id.*, p 684.]

Matras cannot recover by showing that Amoco discriminated on account of age unless the discrimination was a determining factor in the adverse action taken against him. If the discharge of Matras would have taken place without regard to age discrimination, age was not a determining factor in his discharge. [*Id.*, p 691.]

Matras was an action brought under the Fair Employment Practices Act (MCL 423.301 *et seq.*; MSA 17.458[1] *et seq.*, now MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*). In so holding, this Court considered *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), construing title VII of the Civil Rights Act of 1964 (42 USC 2000e *et seq.*).

*McDonnell Douglas* was followed by other decisions of the United States Supreme Court, including *Price Waterhouse v Hopkins*, 490 US 228; 109 S Ct 1775; 104 L Ed 2d 268 (1989). The United States Supreme Court there said that where a decision to discharge an employee "was the product of a mixture of legitimate and illegitimate motives," *id.* at 247, we think these principles require that, once "a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Id.* at 258.

[10] *Id.*

[11] *Id.*

ing a motion for summary disposition, is to show that there is a genuine issue as to an *essential* element[12] of the opposing party's case. If the bona fides of the asserted good cause—the absence of pretext—is an essential element of J. Walter Thompson's case, and J. Walter Thompson has the burden of proving that essential element, it is entitled to summary disposition only if it, not McCart, establishes that there is no genuine issue whether McCart was discharged because of economic necessity or personal animus.

The parties have neither briefed nor argued the question whether the ultimate burden of proof and persuasion on the issue of good cause remains with the defendant in a "wrongful discharge" case where the defendant asserts as an affirmative defense good or just cause on the basis of reduction in force/economic necessity and the plaintiff contends that this is pretextual.

IV

Summary disposition is not appropriate when the moving party's factual assertions depend on the credibility of a witness. The United States Supreme Court has said, in this context, that an affiant who, like Bowen, was an officer of the

---

[12] In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element *essential to that party's case, and on which that party will bear the burden of proof at trial.* In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. [*Celotex Corp v Catrett,* 477 US 317, 322-323; 106 S Ct 2548; 91 L Ed 2d 265 (1986). Emphasis added.]

moving party was "clearly an interested witness" requiring " 'the credibility of his testimony to be submitted to the jury as a question of fact.' " *Sartor v Arkansas Natural Gas Corp,* 321 US 620, 624, 628; 64 S Ct 724; 88 L Ed 967 (1944).

MCR 2.116(C)(10), "no genuine issue as to any material fact," is derived word for word from corresponding FR Civ P 56. The advisory committee on the federal rule stated:

> Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.

J. Walter Thompson's assertions that McCart was discharged as part of a work-force reduction, *necessitated by the need to economize and reduce overhead,* and was not prompted by personal animus, depends entirely on the credibility of Stephen Bowen's testimony on deposition.[13]

McCart was not discharged in accordance with the terms of a facially neutral plan for determining who should be discharged. It appears that Bowen ordered that McCart be discharged, and then left it to Robert Norsworthy, McCart's immediate superior, to determine how the rest of the work-force reduction would be achieved.

Bowen's assertions in his deposition that he directed that McCart be discharged only because of economic necessity, that he bore McCart no ill will, and that McCart was not discharged because of personal animus, constituted assertions regarding Bowen's state of mind when he ordered McCart discharged. This Court has said that in such a case summary disposition may not be granted:

---

[13] His deposition was not, possibly because it would have highlighted the issue of credibility, made a basis of the motion for summary disposition. (See n 4.)

The probative value of a witness's testimony as to his own state of mind depends upon his credibility, and, when the credibility of a witness or deponent is crucial, summary judgment should not be granted. *Arber v Stahlin,* 382 Mich 300, 308-309 [170 NW2d 45] (1969). An averment of what the defendant believed or thought, as distinguished from an averment of the existence of objective facts, does not put a plaintiff to the burden of presenting evidentiary facts of actual malice to withstand a summary judgment action. [*Walker v Cahalan,* 411 Mich 857 (1981).]

In *Arber, supra,* p 308, this Court said:

[S]ummary judgment is not available whenever a presented issue of material fact turns upon the credibility of an affiant or witness whose deposition has been taken.

V

If Thompson's motion had "specifically identif[ied]"[14] the pivotal issue, the bona fides of its stated reason for terminating McCart's employment, then it would be McCart's obligation to "set forth specific facts showing that there is a genuine issue for trial."

The majority, proceeding on the erroneous premise that McCart had not complied with the rule because he did not file an affidavit or a deposition, does not examine McCart's deposition or Bowen's deposition[15]—relied on in J. Walter Thompson's motion—to determine whether they contain statements bearing on whether there is a genuine issue regarding the reason for the elimination of McCart's position and for his discharge.

[14] See n 4.
[15] See n 4.

A

The majority states that "while plaintiff alleges that Bowen disliked him, he has failed to raise any genuine issue of fact regarding the validity of defendant's proofs that adverse business conditions existed and that the elimination of plaintiff's position was necessitated by those conditions."[16] While McCart did not dispute J. Walter Thompson's evidence of *adverse business conditions,* there was a genuine issue of material fact whether the *elimination of McCart's position was necessitated by or based on business conditions.*

There was no evidence, other than Bowen's assertions, that McCart's employment was terminated because of adverse business conditions. The only "evidence" that the elimination of McCart's position was "necessitated" by business conditions is the statement in J. Walter Thompson's *unsworn* motion that McCart's position was eliminated "as part" of a reduction in force,[17] and *assertions* of good faith by Bowen on deposition, which assertions, again, were *not* bases of the motion for summary disposition. It is again relevant that, in all events, Bowen's credibility was clearly in issue.

Contrary to the majority's assertion, there was "evidence, in response to defendant's summary disposition motion and supporting evidence, sufficient to raise a jury question whether defendant discharged him for bona fide economic reasons."[18] The evidence was, to be sure, not "presented" by McCart—it was presented by J. Walter Thompson when it presented for consideration on the motion McCart's and Bowen's depositions and

[16] *Ante,* pp 114-115.
[17] See n 4 for text.
[18] *Ante,* p 111.

a letter from Bowen to McCart explaining why he had been discharged.

**B**

While McCart's position was eliminated and his duties transferred to other persons, McCart testified on deposition that there were constant restructurings and realignments of positions at J. Walter Thompson with transfers of duties and revisions in the titles of persons performing particular duties. A trier of fact could reasonably infer that a restructuring and realignment at J. Walter Thompson might not be substantive and does not necessarily evidence that McCart's position was eliminated for economic rather than personal reasons. To be sure, McCart's credibility is also, because of his interest in the outcome, suspect; precisely, this was all for the trier of fact to resolve.

While Bowen testified that he bore no ill will or personal animus to McCart, McCart countered in his testimony that he felt that Bowen was out to get him from the time that McCart had declined, out of loyalty to Robert Norsworthy, to whom he reported, to accept Bowen's offer of promotion to Norsworthy's position. McCart had been on his guard ever since, and was fearful that alternative work assignments, from time to time offered to him by Bowen, were designed to separate him from his strong client ties so that Bowen could eventually fire him.[19] That was McCart's major concern in declining such "opportunities."

[19] Norsworthy confirmed in a deposition—taken after summary disposition had been granted—that he had warned McCart that Bowen would "get him" if he could. He also testified that Bowen's directive that McCart be fired was the only time that he had ever been directed to discharge someone reporting to him; on all other occasions, it was Norsworthy's responsibility to decide whom to discharge when there was a work-force reduction. McCart's testimony that he had been on guard for a number of years because of his concern that Bowen was out to get him was thus corroborated by Norsworthy.

McCart's answer to the motion for summary disposition said that he "will produce the testimony of his former boss, Robert Norsworthy, who will testify in support of Plaintiff's case, and will verify the facts contained herein." McCart did not otherwise state "in his *responsive pleading* that he would produce at trial evidence that defendant's economic necessity rationale was a pretext." (*Ante,* p 115.) (Emphasis added.)

We all agree that representations and arguments of counsel in their briefs cannot substitute for the materials referred to in MCR 2.116(G)(2), (4), (5). See notes 6, 7 and below in this footnote for text. Excluding the briefs of counsel, the complaint and answer, and the motion for summary disposition and the answer, what is left—in *support* and opposition—are McCart's and Bowen's depositions.

This Court, in *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973), declared that the opposing party's offer to produce competent testimony may create an issue of fact that precludes summary judgment. This Court ruled that plaintiff Rizzo's answer to the defendant's dramshop motion for summary disposition, promising medical testimony to prove that the allegedly intoxicated person was indeed intoxicated, raised a genuine issue of fact. The Court held that the trial judge erred in failing to consider, when ruling on the motion, the offer to produce competent medical testimony at trial:

> The offer to "produce competent medical evidence . . . that Contardi was under the influence of intoxicating beverages after drinking four (4) beers" along with Contardi's admission in his deposition of drinking that amount certainly creates an issue of fact as to Contardi's intoxicated condition prior to the subsequent service of screwdrivers by defendants according to further testimony in his deposition.
>
> As stated above, it is true that this offer to produce medical evidence cannot be totally characterized as an affidavit, deposition, admission, or documentary evidence under GCR 1963, 117.3. *This, however, is data in the form of the permitted category of a "pleading" (i.e., plaintiffs' answer to defendants' motions for summary judgment) or in lieu of an affidavit which is not required of an opposing party.* It is supportive of plaintiffs' claim and should have been considered by the trial judge in ruling on the motions. [*Id.,* p 377. Emphasis added.]

In the instant case, the majority states:

> Such a mere promise to offer factual support at trial was categorized as a "pleading" under the pre-1985 court rules, see, e.g., *Rizzo v Kretschmer,* 389 Mich 363, 377; 207 NW2d 316 (1973), and, as such, is precisely what is now insufficient under the new requirements of MCR 2.116(G)(4), enacted in 1985. See Staff Comment to MCR 2.116: "Subrule (G)(4) is new. . . . [L]anguage . . . is added, *requiring* the party opposing the motion to respond with affidavits or other evidentiary materials . . . , rather than relying on the allegations or denials in pleadings." (Emphasis added.) [*Ante,* p 115, n 4.]

McCart's testimony in that regard was specific, recounting a number of efforts by Bowen to remove him from his ties with the Burger King account. With only one exception, the positions which Bowen offered McCart all involved a loss of responsibility or status for McCart.[20] The only

The majority ignores that the language of GCR 1963, 117.3, adverted to in *Rizzo* is still a part of the applicable court rule, MCR 2.116(G)(5):

| GCR 117.3 | MCR 2.116(G)(5) |
|---|---|
| Such affidavits, together with the *pleadings,* depositions, admissions, and documentary evidence then filed in the action or submitted by the parties shall be considered by the court at the hearing. [Emphasis added.] | The affidavits, together with the *pleadings,* depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered by the court when the motion is based on subrule (C)(1)-(7) or (10). [Emphasis added.] |

It is clear that the language added in subrule (G)(4) (see note 6 for text) does not negate this Court's construction in *Rizzo* of the language of former rule 117.3, which now appears almost word for word in current subrule (G)(5). Moreover, the language added to subrule (G)(4) expresses a concept well understood by bench and bar before the language was added, namely, that an opposing party may not rest alone on allegations or denials in the complaint or answer.

McCart was clearly justified in relying on the same documents— Bowen's and his depositions—relied on by J. Walter Thompson. McCart was also clearly justified in relying on this Court's construction in *Rizzo* of the language of former rule 117.3 carried forward in 2.116(G)(5); it appears from an Auto-Cite check that *Rizzo* has not been questioned.

The United States Supreme Court has said that a party opposing summary judgment need not depose its own witnesses and is not to be limited to evidence that would be admissible at trial:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. [*Celotex, supra,* p 324. See also *id.,* p 328 (White, J., concurring).]

[20] Cf. *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 795-798; 369 NW2d 223 (1985).

exception was a position in which three or four others had been unsuccessful in the recent past. Bowen confirmed that if McCart had accepted that position, McCart's annual salary would have been increased by $50,000 and McCart would have received a $100,000 sign-up bonus. In McCart's view, Bowen was prepared to pay $100,000 to separate McCart from a tie with Burger King and place him in a position in which he would, like the others, fail. Employees do not ordinarily turn down a $50,000 raise, and a $100,000 bonus; that is some evidence that McCart's concerns were real.

C

McCart said that Bowen had assured him that Bowen did not have a problem with McCart declining the offers of new positions. Yet, on the last occasion, early in the year McCart was discharged, when McCart, declining the proposed new assignment, $50,000 raise, and $100,000 bonus, said, "I'd just as soon stay in my position," Bowen responded, "I don't know if I'll allow that."

McCart also testified regarding a run-in with Bowen a few years earlier, following which McCart tendered his resignation in writing, and Bowen acknowledged—before achieving the power he later acquired—that he had "overstepped his bounds." A restructuring and realignment was worked out that did not involve Bowen overseeing McCart, but, within less than a year, McCart found himself again reporting, through Norsworthy, to Bowen.

Bowen was questioned about his assertion, in a letter sent shortly after McCart was discharged, that McCart had been "considering other business alternatives than J. Walter Thompson," and de-

nied that was a factor in the decision to terminate McCart's employment. That denial is not consistent with Bowen's letter to McCart stating that "I"[21] could not discharge other persons "who have an expressed desire for a future with JWT in order to retain you for however long you might choose to continue in '87, having made it very clear for some time that you did not wish to continue with JWT."

McCart denied he was planning on leaving J. Walter Thompson; McCart's declining the $50,000 raise and $100,000 bonus tends to support that denial. Be that as it may, the letter indicates that J. Walter Thompson and Bowen had a choice, that it may not have been "necessary" because of economic conditions to discharge McCart, and that Bowen may have made the decision to discharge McCart in part for a reason other than the stated reason of economic necessity.

The dichotomy between the assertion in the letter that this was a factor, and the denial on deposition, again poses the credibility issue. If the trier of fact were to decide that Bowen deliberately mischaracterized McCart's motives or reasons for declining Bowen's offers of new positions, and in asserting that McCart might choose to resign in 1987, and that Bowen made a personal decision prompted by personal animus to direct that McCart be discharged under the cover of an economic layoff of others, which was, as McCart charged, a ruse insofar as McCart was concerned, the trier of fact could properly conclude that J. Walter Thompson did not have good or just cause for discharging McCart.

Credibility was an issue, Bowen's, McCart's, and

[21] Norsworthy (see n 19) testified that he protested Bowen's decision to discharge McCart, and "urged him not to do that." Bowen responded, "I have made that decision, and you now, you decide who else is going to go."

(see n 19) Norsworthy's. There was a genuine issue as to the material fact whether Bowen chose to direct Norsworthy to discharge McCart for the stated economic reason, or whether the directive was given for reasons personal to Bowen.

MALLETT, J., took no part in the decision of this case.