**Roland BRAZIL, Plaintiff,**

v.

**MICHIGAN DEPARTMENT OF COR-RECTIONS, Charlotte Lemons, Donna Allen Wilson, Kyla Smith, Dinah Y. Moore, John E. Piggott, Sharee L. Booker, Kirk McVittie, and John and Jane Does (1–100), in their individual and official capacities, Defendants.**

Civil No. 07–10834.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 1, 2008.

Christopher J. Trainor, Shawn C. Cabot, White Lake, MI, for Plaintiff.

Cynthia A. Arcaro, Jason R. Evans, MI Dept of Atty. Gen., Lansing, MI, for Defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JOHN FEIKENS, District Judge.

Plaintiff Ronald Brazil filed this suit against his former employer the Michigan Department of Corrections (MDOC) and various individual defendants alleging that his procedural and substantive due process rights were violated and his employment contract was breached when he was terminated for testing positive for marijuana. Defendants have filed a motion for summary judgment on all of Brazil's claims. In their motion they contend that they are entitled to summary judgment because they are shielded from Brazil's constitutional claims by the doctrines of sovereign immunity and qualified privilege and because there are no genuine issues of material fact relating to Brazil's wrongful termination claim. For the reasons set forth below, I GRANT Defendants' motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 1998, Plaintiff Ronald Brazil was hired as a probation officer by the Michigan Department of Corrections (MDOC). As part of his employment, Brazil was subject to random drug and alcohol testing and was informed that the MDOC had a zero tolerance drug policy. On November 17, 2004, Brazil's direct supervisor, Defendant Charlotte Lemons, informed him that he had been randomly selected to undergo a drug and alcohol test at the Groesbeck Occupational Center in Roseville, Michigan.

Brazil reported for the test and provided a urine sample. Because Brazil's initial sample did not contain enough urine, he was asked to provide a second sample. After thirty minutes, Brazil was able to provide the urine necessary to complete the test. Brazil provided both samples to Santana Hobbs who sealed the samples and placed them in a marked bag. Before leaving, Brazil signed a form that contained the following statement:

> "I certify that I provided my urine specimen to the collector, that I have not adulterated it in any manner, each specimen bottle used was sealed with a tamper evident seal in my presence; and the information provided on this form and on the label affixed to each specimen bottle is correct."

Defendants' Motion for Summary Judgment, Exh. 1, Plaintiffs Deposition, Exh. 4 Custody and Control Form (pg 27 of 60). Despite signing the release, when Brazil reported back to work he mentioned to Lemon that he was concerned about the manner in which his urine sample had been handled.

On November 30, 2004, Brazil was contacted by a medical review officer Dr. Janelle Jaworski and informed that he had tested positive for marijuana. Brazil denied using marijuana and informed Jaworski that he was taking medication for acid reflux and asthma. He also requested a second test conducted by a different laboratory. Northwest Toxicology retested the sample Brazil provided on November 17, 2005, and confirmed that it was positive for marijuana.

Defendant Dinah Moore, MDOC Regional Administrator, assigned Defendant Kirk McVittie to investigate whether there was sufficient evidence to determine whether Brazil had violated a work rule. McVittie scheduled an investigatory interview and requested that Brazil fill out an investigatory questionnaire. On January 3, 2005, Brazil and his union representative Barbara Newland attended an investigatory interview with McVittie. During the interview, Brazil expressed concern that his urine sample had not been properly collected and monitored and stated that his physician had told him that his acid reflux medicine, Zantac 75, could trigger a false positive for marijuana in a urine test.

McVittie investigated Brazil's claims by sending written questionnaires to Hobbs and Dr. Jaworski and interviewing Hobbs in person. Hobbs stated that there were no irregularities in the collection or chain of custody of Brazil's urine sample and that all of the lab's protocol had been followed. Dr. Jaworski responded to the questionnaire with a letter stating that "Zantac would not screen and confirm positive for marijuana." Defendants' Motion for Summary Judgment, Exh. 1, Plaintiff's Deposition, Exh. 4 Letter from Dr. Jaworski dated January 7, 2005 (pg 30 of 60).

McVittie finished his investigation and concluded that there was sufficient evidence that Brazil may have violated a work rule. Defendant John Piggott scheduled a disciplinary conference with Brazil and informed him of the pending charges against him. He informed Brazil that he could bring representation and would have an opportunity to provide mitigating evidence. On February 8, 2005, a disciplinary conference was held. It was attended by Brazil; Newland, serving as Brazil's union representative; McVittie; and Piggott. At the conference, Brazil presented Piggott with a written statement resetting forth his concerns with the urine sample testing procedures and asking that he not be terminated.

On February 23, 2005, Brazil was terminated for violation of work and civil service rules. The decision to terminate Brazil was made by Defendant Kathy Warner, the Discipline Director of the Bureau of Human Resources. After filing an unsuccessful grievance through his union, Brazil filed this suit in federal court against MDOC and several individual employees in their official and individual capacities. The suit alleges claims for racial discrimination, violations of Brazil's procedural and substantive due process right, and wrongful discharge.

Defendants have brought a motion for summary judgment on all of Brazil's claims. Brazil has agreed to drop his racial discrimination claim.

## ANALYSIS

### I. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing law. See *Anderson v. Lib-*

*erty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To show the existence of a genuine issue, the nonmoving party must have more than a scintilla of evidence to support its position; there must be sufficient evidence that a jury could reasonably find for the nonmoving party. See *Id.* at 252, 106 S.Ct. 2505. In determining whether there is a genuine issue of material fact, the court must view the evidence and the inferences that can be reasonably drawn from it in the light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. Sovereign Immunity

■ A states and its departments and agencies are generally immune from suit in federal court unless the state has waived its sovereign immunity or unequivocally consented to be sued. See *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir.2005) (citations omitted). This immunity extends to actions against state officials sued in their official capacity for money damages. *Id.*

Because MDOC is a state agency, it is immune from Brazil's suit against it. Brazil's claims for money damages against the individual defendants in their official capacities are also barred by the doctrine of sovereign immunity.

## III. Qualified Immunity

■ Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In determining whether the government officials are entitled to qualified immunity, courts ask two questions: First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff has shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation? See *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

### A. Has a constitutional violation occurred?

#### 1. Procedural Due Process

■ The Sixth Circuit has held that prior to termination of a public employee who has a property interest in his employment, the due process clause requires that the employee be given "oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer." *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir.) (citing *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304 (6th Cir.1988)), cert. denied, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990). "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The employee must also be given the opportunity for a post-deprivation hearing before a neutral decision maker. See *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir.2004).

■ In this case, Brazil was afforded due process both before and after he was terminated. Before being fired, Brazil was informed of the evidence and charges against him and given an opportunity to present his side of the story both at the investigatory interview and the disciplinary conference. During the investigatory interview, Brazil expressed concerns over the collection and chain of custody of his

urine sample and the possibility that his acid reflux medication could have caused him to test positive for marijuana. McVittie investigated both of these concerns and the results of his investigation were considered as part of the disciplinary conference. Not only did Brazil have an opportunity to present his side of the story, McVittie thoroughly investigated Brazil's concerns before a decision was made. After being terminated, Brazil was given the opportunity to file a grievance through the union. Because he was provided with adequate due process, Brazil's procedural due process rights were not violated.

### 2. Substantive Due Process

■ A substantive due process right may be implicated when a public employee is discharged for reasons that shock the conscience. *Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir.2000) (citing *McMaster v. Cabinet for Human Resources*, 824 F.2d 518, 522 (6th Cir.1987)). The MDOC has a zero tolerance drug policy. The MDOC's decision to terminated Brazil after he tested positive for marijuana and his concerns about the collection and treatment of his urine sample and the possibility of false positives were investigated does not shock the conscience and does not rise to the level of a substantiative due process violation

### 3. Conclusion: Constitutional Violations Have Not Occurred

Because neither Brazil's procedural due process rights nor his substantive due process rights were violated, the first part of the test is not met and the individual defendants are entitled to qualified immunity from Brazil's constitutional claims.

### IV. Wrongful Discharge/Breach of Contract

Brazil has also brought a claim for wrongful discharge/breach of contact. The Michigan Supreme Court has explained that "an employee may have an enforceable right not to be terminated except for just cause, grounded in either an express oral or written contract or in legitimate expectations arising from an employer's policy statements." *McCart v. J Walter Thompson USA, Inc.*, 437 Mich. 109, 114, 469 N.W.2d 284 (1991). Work Rule 18 of the MDOC Employee Handbook states that certain activities constitute "just cause for dismissal" and will result in discharge," including "reporting for duty or being on duty with a prohibited level of drugs present in the bodily fluids." Defendants Motion for Summary Judgment, Exh. 1, Plaintiff's Deposition, Exh. 5, MDOC Employee Handbook, Work Rule 18 (pg 50 of 60). Brazil has stated that he was aware of the MDOC's zero tolerance drug policy. Plaintiff's Response, Exh. A, pp. 59 and 61.

■ MDOC conducted an investigation and found sufficient evidence to conclude that Brazil had violated Work Rule 18. Under the Employee Handbook, Brazil's violation was just cause for termination. Even taken in the light most favorable to Brazil, the evidence in this case establishes that MDOC had just cause to terminate Brazil under the plain language of the Employee Handbook. I find, therefore, that Brazil has not presented adequate evidence to raise a genuine issue of material fact concerning his wrongful discharge/breach of contract claim.

### CONCLUSION

For the reasons set forth above, I find that Brazil's constitutional claims are barred by the doctrines of sovereign immunity and qualified privilege and that he has failed to demonstrate a genuine issue of material fact concerning his wrongful discharge claim. As a result, I GRANT

Defendants' motion for summary judgment on all claims.

**IT IS SO ORDERED.**