*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TONYA COOPER,

Plaintiff-Appellant,

v

TRINITY HEALTH-MICHIGAN, doing business as ST. JOSEPH MERCY OAKLAND HOSPITAL,

Defendant,

and

ROMAN FRANKLIN, M.D., PC, and ROMAN FRANKLIN, M.D.,

Defendants-Appellees.

UNPUBLISHED
February 12, 2019

No. 337702
Oakland Circuit Court
LC No. 2015-150774-NH

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Plaintiff Tonya Cooper appeals by right the trial court's order granting summary disposition in favor of defendants, Roman Franklin, M.D., P.C., and Roman Franklin, M.D., in this medical malpractice action. On appeal, plaintiff argues that the trial court improperly granted defendants' motion for summary disposition because there is a genuine issue of material fact as to whether defendants' alleged negligence was the proximate cause of plaintiff's injury. Specifically, plaintiff argues that there is a factual dispute as to whether her hematoma was caused either by a misdiagnosis and six-month prescription unwarranted anti-coagulant medication, or by a nurse's unauthorized or improper intramuscular injection of Arixtra while plaintiff was in the hospital. We agree. We therefore reverse and remand for further proceedings.

# I. BACKGROUND

In 2006 and 2008, plaintiff suffered from a transient ischemic attack, similar to a stroke. In 2013, plaintiff suddenly lost hearing in her right ear. Her medical doctors could not discover the cause of the hearing loss, and they referred plaintiff to Dr. Franklin, who specializes in internal medicine, hematology, and oncology. Plaintiff visited Dr. Franklin on June 25, 2013, where he conducted laboratory testing and prescribed the anticoagulant Lovenox. Plaintiff began injecting herself with Lovenox in the stomach every day. When plaintiff's laboratory results came back, she tested positive for a genetic mutation that increases an individual's risk of blood clots. On July 1, 2013, Dr. Franklin saw plaintiff to review the laboratory results and diagnosed her with thrombophilia, a condition where blood clots more easily, and he also listed Von Willebrand's Disease as a possible cause of plaintiff's medical issues. Plaintiff also tested "mildly positive" for a patent foramen ovale (PFO)—a hole in the heart that failed to close after birth. Dr. Franklin ran tests at several other appointments, but the only actual diagnosis listed was thrombophilia.

Plaintiff continued to experience hearing loss, headaches, blurred vision, dizziness, fatigue, joint and back pain, easy bruising, memory loss, and depression. On September 12, 2013, plaintiff underwent heart surgery to close the PFO. Her heart surgeon prescribed aspirin and another anticoagulant called Plavix. On January 14, 2014, plaintiff was admitted to St. Joseph's Hospital for an unrelated reason. When conducting an examination, the doctor at St. Joseph's Hospital concluded plaintiff's abdomen was "nontender" with "bowel sounds present." On January 15, 2014, Dr. Franklin discontinued Lovenox and prescribed a daily subcutaneous injection of the anticoagulant Arixtra in the abdomen. Plaintiff received her fist subcutaneous injection from hospital staff the same day. Before leaving, plaintiff was evaluated by two other doctors, who noted that her abdomen was "[s]oft, nontender, nondistended, positive bowel sounds in all the quadrants."

Plaintiff received subcutaneous injections from hospital staff over the next two days. On January 17, 2014, an ultrasound was ordered because plaintiff complained of abdominal pain. The ultrasound revealed:

> Heterogeneous, hypoechoic mass like lesion in the right lower quadrant of the abdomen without internal vascularity on Doppler images. This is [sic] finding is of uncertain etiology, but *differential consideration includes an intra-abdominal hematoma*. Further characterization by a contrast enhanced CT scan of the abdomen and pelvis is recommended. [Emphasis added.]

Doctors ordered that plaintiff was to receive no further injections on her right side. On January 18, 2014, a nurse administered an injection of Arixtra, which defendants assert was unauthorized and improperly administered intramuscularly rather than subcutaneously. After that injection, plaintiff underwent a CT scan the same day, which confirmed the existence of a hematoma, consistent with the prior ultrasound.

As a result of the hematoma, plaintiff had to undergo surgery and also suffered nerve damage that affects her mobility in her right lower extremity. On March 9, 2014, plaintiff

consulted with Dr. Erin Cobain, who concluded that no laboratory testing suggested plaintiff had Von Willebrand's Disease, a history of easy bleeding, or any kind of hypercoagulable diagnosis.

Plaintiff filed her complaint against defendants, alleging medical malpractice for negligent care and treatment. She alleged that Dr. Franklin misdiagnosed her with hypercoagulable conditions and prescribed medications for a disease she did not have. In an affidavit of meritorious claim, Dr. Leon C. Landau asserted that in his professional opinion, defendants violated the applicable standards of care when Dr. Franklin misdiagnosed plaintiff and prescribed her anticoagulation medications, which caused the hematoma and nerve damage. Defendants filed two affidavits of meritorious defense by different doctors specializing in internal medicine and hematology. According to the first affidavit, Dr. Franklin's treatment was entirely appropriate considering plaintiff's medical history, especially the transient ischemic attacks. The second affidavit concluded that Dr. Franklin's treatment could not have proximately caused plaintiff's injuries. Trinity Health-Michigan also filed a third affidavit of meritorious defense from another doctor, who again concluded that Dr. Franklin did not cause plaintiff's injuries.[1]

On December 19, 2016, defendants filed a motion for summary disposition, arguing that there were many factual errors in plaintiff's complaint, and Dr. Franklin's treatment was not below the applicable standard of care. Further, defendant argued the actual cause of the hematoma was likely an unauthorized intramuscular injection of Arixtra by a nurse at the hospital, which was administered on or after January 18, 2014. In response, plaintiff argued that because there was evidence that the hematoma was present before the injection, there was at least a question of fact for the jury to decide. Defendants replied, arguing that plaintiff did not have an abdominal hematoma when she was admitted to the hospital. Instead, they assert that the hematoma was discovered after plaintiff received an unauthorized intramuscular injection of Arixtra by the nurse at the hospital. Thereafter, plaintiff complained of stomach pain and received the ultrasound. At the hearing on the motion for summary disposition, the trial court concluded that plaintiff did not provide any evidence that explained a causal connection between the medication and treatment she received from Dr. Franklin and the hematoma. For that reason, the trial court granted defendants' motion for summary disposition. This appeal followed.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "In determining whether summary disposition is appropriate, an appellate court must consider the *entire record* and *construe reasonable inferences* arising from the evidence in a light most favorable to the nonmoving party." *Michigan Twp Participating Plan v Federal Ins Co*, 233 Mich App 422, 431-432; 592 NW2d 760 (1999) (emphasis added). At a summary disposition stage of proceedings, "there is a great difference between an inquiry to determine whether or not there is an issue of fact and a trial to decide a disputed issue of fact." *Durant v Stahlin*, 375 Mich 628, 646-647; 135 NW2d 392

---

[1] The trial court granted Trinity Health-Michigan's motion for summary disposition under MCR 2.116(C)(10), and plaintiff does not appeal that decision.

(1965) (SOURIS, J). The non-moving party may rely on circumstantial evidence, so long as the party's theory of causation is more than merely plausible. *Skinner v Square D Co*, 445 Mich 153, 163-167; 516 NW2d 475 (1994), overruled in part on other grounds *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999). The non-moving party's theory may be deemed more persuasive if the moving party's alternate theories are significantly less probable. See *id*. at 167-169.

## III. ESTABLISHMENT OF CAUSATION

Causation in a tort action requires a plaintiff to establish both factual causation and proximate causation. *Johnson v Vanderkooi*, 502 Mich 751, 768; 918 NW2d 785 (2018). "The cause in fact element requires proof that ' "but for" the defendant's actions, the plaintiff's injury would not have occurred.' " *Id*., quoting *Skinner*, 445 Mich at 163. "Determining proximate causation requires an examination of the foreseeability of consequences and of whether a defendant should be held legally responsible for the consequences of the defendant's conduct." *Id*. There can be more than one proximate cause. See *O'Neal v St. John Hosp & Med Ctr*, 487 Mich 485, 496-497 (HATHAWAY, J., joined by WEAVER, J.), 552-553 (YOUNG, J., joined by CORRIGAN, J.); 791 NW2d 853 (2010). Therefore, a plaintiff must only "introduce evidence permitting the jury to conclude that the act or omission was *a* cause" of the plaintiff's injuries, not necessarily "the *sole* catalyst." *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004) (emphasis in original).

## IV. DEFENDANTS' THEORY OF CAUSATION

As noted, plaintiff's theory of the case is that she suffered an intramuscular rectus sheath hematoma because of the unwarranted anticoagulant medication prescribed by Dr. Franklin. Defendants argue that the hematoma was caused by a nurse inadvertently administering an intramuscular, rather than subcutaneous, injection of anticoagulant medication at the hospital. Defendants rely on medical literature stating that anticoagulation therapy "can directly causa [sic] rectus sheath hematoma by accidental intramuscular injection of LMWH[2]." However, the day *before* the allegedly improper injection, plaintiff had received an ultrasound examination in response to her complaints of abdominal pain. When the ultrasound report is considered in the light most favorable to plaintiff as the non-moving party, it indicates that the hematoma *was already present*. Therefore, the trier of fact could conclude that defendants' theory of causation is simply impossible.

## V. PLAINTIFF'S THEORY OF CAUSATION

### A. "But For" Causation

In contrast, the same medical literature describes rectus sheath hematomas as rare, but explains that "anticoagulation is the most frequent predisposing factor" and that they are "a well-recognized complication of anticoagulant therapy." The literature strongly implies that rectus

---

[2] LMWH stands for low molecular weight heparin, a class of anticoagulant medicine.

sheath hematomas require *both* a predisposing factor *and* a precipitating factor, even in hematomas that otherwise seem to be spontaneous. However, it also impliedly uses the two terms synonymously. In either event, the literature clearly establishes that plaintiff's improper anticoagulation medication was at least a *foreseeable* predisposing factor and *necessary* for the hematoma to have occurred. Consequently, the evidence shows more than a mere possibility that the improper anticoagulation therapy was a "but for" factual cause of plaintiff's rectus sheath hematoma.

## B. Proximate Causation

Additionally, the literature implies that improper anticoagulation therapy alone can directly cause rectus sheath hematomas. However, even presuming that reads too much into the literature, it further states that the precipitating factors can include "trivial" external trauma and "any abdominal wall medication injections (eg, insulin)." It is well-known that insulin is injected subcutaneously. In other words, sufficient predisposition would directly cause any number of ordinary, innocuous, *foreseeable*, and *inevitable* acts to trigger a hematoma. As our Supreme Court has observed,

> [s]ince there are risks that can be foreseen but would not be avoided by a reasonable person, for liability to attach the harm must be of a kind that defendant should have avoided or it must be shown that defendant's actions presented an unreasonable risk of harm. [*Jones v Detroit Med Ctr*, 490 Mich 960, 960; 806 NW2d 304 (2011).]

The literature clearly shows that Dr. Franklin's actions presented an unreasonable risk of harm. Even if a rectus sheath hematoma was not a guaranteed outcome, our Supreme Court has found a genuine question of fact regarding proximate causation where a doctor improperly prescribed a medication known to potentially cause a dangerous allergic reaction despite such reactions being rare and individually unpredictable. See *Id*. at 961. Similarly, the evidence here establishes a genuine question of fact whether Dr. Franklin's anticoagulant therapy proximately caused plaintiff's hematoma.

## C. Affidavits from Dr. Landau

Defendants contend that plaintiff failed to articulate any specific causal link between Dr. Franklin's prescription and plaintiff's hematoma. We disagree, finding that the affidavit of merit from Dr. Leon C. Landau, originally attached to plaintiff's complaint and later also attached to plaintiff's response to defendants' motion for summary disposition, sufficiently establishes causation. We therefore need not address defendants' assertion that Dr. Landau's revised and updated affidavit, submitted in support of plaintiff's motion for reconsideration, is not properly in evidence.

A mere statement of correlation does not establish causation, nor does a conclusory assertion that a defendant's breach caused the plaintiff's injury. *Ligons v Crittenton Hosp*, 490 Mich 61, 77-78; 803 NW2d 271 (2011). However, affidavits of merit are read as a whole, and they are expected to be read by "sophisticated parties, knowledgeable in the field of medicine, and presumably in possession of reasonably illuminating records pertaining to the [plaintiff's]

treatment…" *Esselman v Garden City Hosp*, 284 Mich App 209, 221-222; 772 NW2d 438 (2009). Dr. Landau's affidavit of merit stated, in relevant part:

> As a direct and foreseeable *consequence of* the negligence of the above-listed health care providers, Ms. Cooper took inappropriate and non-indicated medication for a prolonged period of time *which caused* her blood to dangerously thin. *Consequently*, she suffered an intra-abdominal bleed and hematomas. The pooling of the blood *caused* nerve compression *which resulted in* nerve injury, including, but not limited to, a lumbosacral plexus injury. She required surgery to evacuate the hematoma, extended hospitalization, and rehabilitation. She continues to suffer pain and disability on a daily basis and must take regular pain medication. [(emphasis added).]

A fair reading of the above paragraph is that the improper anticoagulant medication prescribed by Dr. Franklin *caused* dangerous blood thinning, which *caused* a hematoma, which in turn *caused* other injuries. This statement is neither conclusory nor tautological. Even without defendants' own medical literature, plaintiff has sufficiently articulated a direct causal link and mechanism of action between defendants' conduct and plaintiff's injuries to withstand summary disposition. See *Durant*, 375 Mich at 646-647.

### D. Response to Motion for Summary Disposition

Finally, we disagree that plaintiff failed to respond adequately to the motion for summary disposition.

"Under MCR 2.116(G)(4), a party opposing a motion for summary disposition is required to respond with affidavits or other evidentiary materials to show the existence of a factual dispute, rather than relying on the allegations or denials in the pleadings." *McCart v J Walter Thompson USA, Inc*, 437 Mich 109, 115; 469 NW2d 284 (1991). The non-moving party may not merely promise to produce evidence at trial, *id*., or fail to cite or offer any evidence whatsoever. *Barnard Mfg v Gates Performance*, 285 Mich App 362, 374-375; 775 NW2d 618 (2009). However, the non-moving party may rely on facts found in " '[a]ffidavits, depositions, admissions, or other documentary evidence.' " *McCart*, 437 Mich at 115, quoting MCR 2.116(G)(3) (alteration by the *McCart* Court). Furthermore, summary disposition may be inappropriate even if the non-moving party fails to submit a properly-supported response. *White v Taylor Distributing Co, Inc*, 275 Mich App 615, 626-627; 739 NW2d 132 (2007).

Here, it is clear that plaintiff's response to defendants' motion for summary disposition was amply supported. Defendants' motion vaguely asserted that plaintiff's theory of causation was speculative; the motion was otherwise premised on defendants' alternate theory, discussed in part IV above. In response, plaintiff relied on the facts asserted by defendant and quoted from evidentiary materials provided by defendant to show that defendant's alternate theory was totally unsupported. Nothing in MCR 2.116(G)(4) precludes a non-moving party from making use of the moving party's own evidence, and MCR 2.116(G)(3) clearly permits the non-moving party to rely on *any* documentary evidence in the record. Finally, plaintiff also provided another copy of Dr. Landau's affidavit of merit, which as discussed above in part V.C, set forth a non-speculative theory of causation, especially in light of the evidence provided by defendant. Plaintiff's

response to defendant's motion for summary disposition did not "rest upon the mere allegations or denials of his or her pleading." MCR 2.116(G)(4).

## VI. CONCLUSION

Upon review of the entire record, drawing reasonable inferences in favor of the non-moving party, and recognizing that plaintiff is not obligated to prove her case at this stage of the proceedings; we find that plaintiff has established a genuine question of fact whether the improper anticoagulant medication prescribed by Dr. Franklin factually and proximately caused plaintiff's intramuscular rectus sheath hematoma. We therefore reverse the trial court's grant of summary disposition in favor of defendants, and remand for further proceedings. We do not retain jurisdiction. Plaintiff, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause